STATE of Missouri, Respondent,

v.

William BUTLER, Appellant.

No. WD 155192.

Missouri Court of Appeals,
Western District.

Dec. 29, 1998.

Amy Bartholow, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

William Butler appeals the circuit court's judgment convicting him of two counts of unlawful use of a weapon and three counts of assault in the third degree. He asserts that the circuit court erred in overruling his objections to evidence regarding other crimes committed by him. We find that the state's repeated references to other crimes were more prejudicial than probative; therefore, we reverse the circuit court's judgment and remand for a new trial.

The state drew the jury's attention to evidence of Butler's other crimes in three ways. First, the state elicited evidence from Donna Wattree, the victim's friend, that, on January 9, 1997, the date of the first alleged assault, authorities had released Butler from jail. Second, the state elicited evidence from the victim that she paid for a bond to get Butler out of jail and that, on January 30, 1997, the morning after the second alleged assault, Butler had to appear in court for the case for which he was out on bond. Third, the state elicited testimony from the victim that, during the second alleged assault, Butler told her, "I ought to kill you like that no-good bitch I killed before."

In regard to evidence concerning Butler's release from jail and subsequent court date, Butler objected to the introduction of this evidence during a conference on his motion *in limine.* The circuit court overruled the motion. At trial, Butler objected during Wattree's testimony when the prosecutor inquired:

Q. Can you please tell the jury when you first saw the defendant that night?

A. I first saw him between, I would say, ten and eleven. He had just been released from jail.

MR. EULER:[1] I'm going to object.... I'd like to renew my objection to her testifying regarding the fact that he had been released from jail. That would violate my client's due process rights and rights to a fair trial, to have that information come in.

THE COURT: The objection is overruled.

. . . .

Q. ... Ms. Wattree, again, could you please tell me, when you first saw the defendant, where had he been?

A. He had just been released from jail, and he had walked from the downtown area here, in the cold, all the way out to Bellaire.

During her examination of the victim, the prosecuting attorney asked:

Q. ... Do you remember where you were when you first saw [Butler]?

A. Sitting at the table.

Q. All right. And where did he come in from?

A. From outside, and he had been—he had been to jail that night.

Q. All right. And did you have anything to do with assisting him in getting out of jail?

A. I went down and posted his bond.

Q. All right. And after you posted his bond, what did you do?

A. I went back to Bessie's.

Q. All right. Did you wait for him?

A. No, I wasn't really waiting on him, because I was kind of upset with him at the time.

Q. Did you wait for him to be released? Did you wait there at the jail?

A. No, I did not.

MR. EULER: Objection, Your Honor.... I'm going to object to this line of questioning regarding his getting out of jail. I think it violates my client's due process rights and rights to a fair trial. We're getting way deep into him being in jail and her bonding him out, and I think we should move on.

THE COURT: The objection is overruled.

. . . .

Q. ... So, ... after you bonded him out, where did you go?

A. Back to Bessie's.

. . . .

Q. ... When he did arrive at Bessie's, can you recall what happened?

A. He was angry and he wanted me to leave at that time. I expressed that I wasn't the one that had put him in jail and that I didn't want to leave, and we got to arguing.

Later, during the victim's testimony regarding the second alleged assault, the prosecutor asked:

Q. What happened when you woke up?

A. I told him that I was in a lot of pain. I remember him sitting next to me and saying to me, "Look at what you made me do to you. If you would just do what I want you to do and if you would just stay home, then I wouldn't have to do this to you." I, at that point told him, you know, "You remember you have—"

MR. EULER: ... At this time, I'd like to renew my objection to any testimony regarding the court date the defendant missed that day as being more prejudicial than probative, and violating my client's right to due process and a fair trial.

THE COURT: All right. The objection is overruled.

. . . .

1. Richard Euler and Pat M<sup>c</sup>Ginnis were Butler's attorneys.

Q. ... I believe you were telling us what the defendant was saying to you. Can you continue with that?

A. At that point, I told him that he was supposed to be at court at nine a.m. that morning, and that the bond was in my name, and that I needed to go and call the court or the bonding company to take care of that.

In regard to evidence concerning the victim's statement that Butler threatened to kill her "like the no-good bitch he killed before," Butler objected to the introduction of this evidence in his motion *in limine*. The circuit court overruled the motion. At trial, the victim testified that during the second assault that Butler had "exploded" in anger and had hit her, cursed at her, and held a butcher knife to her throat. The prosecutor asked her:

Q. All right. After you broke the knife, what happened next?

A. [Butler] got very, very angry at that point. He continued to hit me and to drag me over to the couch.

Q. Okay. What happened when you guys got to the couch?

A. He straddled over my body and he was choking me, and he then reached up under the couch and pulled out a pocketknife.

Q. What did he do with the pocketknife?

A. He stuck it in my side by my heart and he proceeded to say that he should cut my fucking heart out, and that he was going to kill me, and that he was tired of me treating him like he was some punk-ass nigger and disrespecting him in front of other people, et cetera.

Q. Are those his words?

A. Yes, it was.

Q. Okay. Do you recall him making any other threats to you?

A. He said throughout the period, and I'm not sure exactly when, that he was going to kill me like the no-good bitch he killed before.

Q. Okay. When he said that to you, when he said he was going to kill you like he killed that no-good bitch before, was he holding any weapons at that time?

A. Yes, he was.

Q. After he had pulled the folding knife out from under the couch and was holding that, did he pull anything else out?

A. Yes, he did.

Q. And what was that?

A. A barbecue fork.

■ The state must restrict its prosecution of a defendant only to the crimes with which it has charged the defendant. *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc), *cert. denied*, 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989). The state violates this rule when it, without legal justification, presents evidence which shows that the defendant has committed, been accused of, been convicted of, or definitely associated with another crime. *Id.*

■ Evidence that Butler was in jail was evidence that he had been accused of committing other crimes. *State v. Laws*, 668 S.W.2d 234, 237 (Mo.App.1984). For this evidence to be admissible, it had to have some legitimate tendency to prove that Butler committed the crime for which he was on trial, and its probative value must outweigh its prejudicial effect. *State v. Skillicorn*, 944 S.W.2d 877, 886 (Mo. banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 568, 139 L.Ed.2d 407 (1997).

The state's references to Butler's being in jail, the victim's bonding him out of jail and Butler's court date did not have a legitimate tendency to prove that Butler committed the crime for which he was on trial. The state does not offer any legitimate rationale supporting the introduction of these references. Instead, it argues that the references were vague and indefinite and did not clearly associate Butler with a specific crime. We disagree.

Although vague references of other crimes cannot be characterized as clear evidence associating the defendant with other crimes, *Hornbuckle*, 769 S.W.2d at 96, the state's references to Butler's being in jail were hardly vague. The state emphasized Butler's being in jail or needing bonding out of jail by repeatedly asking witnesses about it. These questions alerted the jury that Butler was not only charged with the crimes for which he was on trial, but that he had been arrested previously, was out on bond, and had failed to appear for a court date. These references, coupled with the victim's testimony that Butler threatened to kill her "like the no-good bitch he killed before," significantly prejudiced Butler.

Butler did not object to the victim's statement regarding the threat to kill her. We can review that issue only if we determine that it was plain error. Rule 30.20. The Supreme Court has defined plain error as error which, on its face, gives an appellate court substantial grounds for believing that manifest injustice has resulted from the error. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). Butler's complaint facially establishes a substantial ground for believing that he suffered a manifest injustice. Hence, we review the plain error to determine whether it, in fact, resulted in manifest injustice or a miscarriage of justice.

▆▆ Evidence of other crimes is relevant to prove the specific crime charged only if it tends to show motive, intent, absence of mistake or accident, a common scheme embracing two or more related crimes, or the identity of the person charged with the crime at trial. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). It also may be relevant if it shows the circumstances or sequence of events surrounding the offense and helps paint a complete and coherent picture of the crime charged. *Skillicorn*, 944 S.W.2d at 886–87. The Supreme Court, however, has cautioned that, to be admissible, such evidence must be more probative than prejudicial. *Id.* at 887.

▆▆ The state contends that the evidence of the threat was probative of the charge of unlawful use of a weapon by exhibiting in that Butler knowingly exhibited weapons readily capable of lethal use in an angry and threatening manner and that it showed the complete picture of the crime. While we agree with the state's contentions, we conclude that the evidence was more prejudicial than probative. Isolating this reference from the rest of the trial, we would not hesitate to find this reference admissible. The state, however, repeatedly made references to Butler's being in jail throughout the trial. The threat highlighted to the jury that Butler may have murdered a person. Such evidence was far more prejudicial than probative given the repeated references to Butler's being in jail. The circuit court, therefore, abused its discretion in allowing this evidence.

For reversal to be warranted, however, this error must have "so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence." *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). Given the repeated references and the prosecutor's emphasizing the references with his questions, a reasonable probability exists that the improper evidence influenced the jury's verdict. This case is unlike those cases relied upon by the state in which the references to other crimes were isolated, singular, vague or brought into evidence by the defendant's own questions or did not even constitute evidence of other crimes. *See Hornbuckle*, 769 S.W.2d at 95–96; *State v. Norton*, 949 S.W.2d 672, 678 (Mo.App.1997); *State v. Young*, 943 S.W.2d 794, 798–99 (Mo. App.1997); *State v. Simmons*, 939 S.W.2d 487, 489–90 (Mo.App.1997); *State v. Tivis*, 933 S.W.2d 843, 846 (Mo.App.1996); *State v. Hoff*, 904 S.W.2d 56, 60 (Mo.App.1995); *State v. Parker*, 886 S.W.2d 908, 922 (Mo.1994), *cert. denied*, 514 U.S. 1098, 115 S.Ct. 1827,

131 L.Ed.2d 748 (1995); *State v. Rhodes*, 829 S.W.2d 41, 44 (Mo.App.1992); and *State v. Price*, 787 S.W.2d 296, 301–02 (Mo.App.1990).

 Butler also complains that the circuit court erred in sustaining the state's motion *in limine* and in precluding him from cross-examining Donna Wattree, a state witness, regarding her pending charge for sale of a controlled substance. Because we expect the issue to arise on retrial, we address it.

 Generally, the credibility of a witness may not be impeached by showing an arrest, investigation or criminal charge that has not resulted in a conviction. *State v. Simmons*, 944 S.W.2d 165, 179–80 (Mo. banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997). Such evidence is permissible only if it demonstrates the witness' specific interest and motivation to testify for the state or the witness' expectation of leniency in exchange for his testimony. *Id.* at 180.

Butler maintains that the state gave Wattree favorable treatment in her pending drug case by ensuring that the circuit court released her from jail on a recognizance bond. He argues that the state's favorable treatment demonstrated Wattree's bias and credibility as a witness. We disagree.

During the state's offer of proof on the issue, Wattree testified that she did not discuss her pending charge with the prosecuting attorney in Butler's case and that the prosecutor did not offer to help her in her pending drug case. She also said that she had no expectation of any favorable treatment. Moreover, the prosecutor in Wattree's case testified that Wattree did not receive special treatment. Contrary to Butler's assertions, the state did not ensure that Wattree would get the recognizance bond. The state merely told the public defender that it would not object to a bond reduction.[2] Butler's contention is without merit.

Because the state's repeated references to other crimes were more prejudicial than probative, we reverse the circuit court's judgment and remand for a new trial.[3]

ROBERT G. ULRICH, Judge, and EDWIN H. SMITH, Judge, concur.

---

2.  When ruling on the offer of proof, the circuit court said that a recognizance bond was not unusual in cases such as Wattree's.

3.  Butler also complained that the circuit court erred in overruling his objection to the state's closing argument and in overruling his motion for acquittal. Because his point on appeal regarding evidence of other crimes is dispositive, we need not address these remaining points.