STATE of Missouri, Plaintiff–Respondent,

v.

Demarcus MOORE, Defendant–Appellant.

No. 28602.

Missouri Court of Appeals, Southern District, Division Two.

May 20, 2008.

Ellen H. Flottman, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. Bartholomew, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY W. LYNCH, Chief Judge.

Demarcus Moore ("Defendant") was found guilty by a jury of robbery in the first degree, in violation of section 569.020,[1] and assault in the second degree, in violation of section 565.060, and sentenced to consecutive ten- and three-year terms, respectively. His sole point in this appeal of those convictions posits that the trial court plainly erred in not permitting Defendant to cross-examine a witness on his unrelated pending criminal charges. Finding no merit in Defendant's claim, we affirm.

### Factual and Procedural Background

The evidence adduced at trial, viewed in the light most favorable to the verdict, showed the following: On the evening of September 22, 2005,[2] Dennis Gore was on

---

1. All references to statute are to RSMo 2000, unless otherwise indicated.

2. There are a number of discrepancies throughout the transcript and briefs regarding the date of the offense; both the informa-

duty as a delivery driver for a Pizza Hut in Charleston, Missouri, when a call came in for two pizzas to be delivered to 211 Elm Street. Gore was first instructed to deliver the order to South Elm Street, but he was unable to find the correct address and returned to the restaurant. While he was out, the person who placed the original order called back to the Pizza Hut, asking where the order was. Gore returned to his car, this time heading to 211 North Elm Street. As he drove along North Elm, Gore noticed a larger man standing by the side of the road underneath a streetlight. Gore described the man as around six foot two inches tall, "heavyset," and wearing dark clothing. Gore pulled his car over and asked the man "if he ordered pizzas," and when the man replied that he had, Gore pulled into the nearby driveway of a white trailer at the man's direction. The larger man, later identified as Fred Flemming, told Gore that someone in the trailer had placed the order, but when Gore climbed the porch steps and knocked on the door of the trailer, there was no answer. At that point, Gore realized that Flemming had followed him onto the porch and that there was another, smaller man also on the porch. While Gore did not get a clear look at the smaller man's face, he described him as both skinnier and shorter than Flemming, and wearing a "darkish hoodie." Gore also noticed that the smaller man was holding what appeared to be "a wooden club."

The smaller man told Gore to "give [me] the pizzas," but Gore was unable to initially react. When Gore did not respond, the man repeated his request, and Gore "looked at him like he was stupid." The smaller man, later identified as Defendant, then hit Gore on the left side of his head, knocking him completely off of the porch. Flemming and Defendant began to pat Gore down, and Defendant told Gore to "give [me] the money or [I will] hit [you] again." Gore gave Defendant somewhere in the neighborhood of $22.00 to $23.00 in a variety of denominations. Flemming and Defendant each grabbed a pizza and ran away.

Gore got to his feet and made his way back to his car. He immediately drove to the Charleston Police Department, where he was interviewed by Officer Brandon Cade. During the course of the interview, Officer Cade recalled seeing two men a few nights earlier who matched the descriptions given by Gore and pulled up Fred Flemming's picture on his computer. Gore immediately identified Flemming as the larger of the two men who had accosted him. An order was put out to arrest Flemming, and Officer Cade called an ambulance to tend to Gore's head injury. Gore was treated by the EMT crew that arrived at the station, but waited until the end of his shift at Pizza Hut before going to the hospital. At the hospital, Gore was treated for a concussion and released.

While waiting on the ambulance to arrive at the station, Officer Cade received word that Flemming had been picked up nearby. When Flemming was brought into the station, Officer Cade advised him of his *Miranda*[3] rights and asked Flemming about a "particular crime involving the pizza delivery person." Flemming told Officer Cade that he and Defendant had eaten pizzas and not paid for them, and that Defendant hit the delivery man and

tion and amended information, however, list the date of the offense as September 22, 2005. Defendant raises no issue concerning any variance between the date of the offense as alleged in these charging documents and the

date of the offense is supported by the evidence.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

stole his money. Using that and other specific information supplied by Gore and Flemming, the Charleston Police secured a search warrant for Defendant's home. While executing the search warrant, police found two pizza boxes consistent with the order Gore delivered that night, a dark, hooded jacket consistent with that described by Gore as being worn by the smaller man who assaulted him, and numerous pieces of currency consistent with that taken from Gore during the assault. Officer Cade also obtained money from Flemming, who asserted that it was some of that taken from Gore. Charleston Police then arrested Defendant.

The Mississippi County Prosecutor charged Defendant with first-degree robbery and first-degree assault, pursuant to sections 569.020 and 565.050, respectively. At Defendant's jury trial, Flemming testified for the State, in exchange for a plea agreement with the State on his robbery and assault charges arising out of this incident in which he would receive a five-year prison sentence with a 120–day callback, pursuant to section 559.115, RSMo Cum.Supp.2005. During Flemming's testimony, but outside the presence of the jury, Defendant's counsel asked the trial court to permit her to cross-examine Flemming regarding unrelated criminal charges pending against him in the same county, but to prohibit the State from going into the details of those charges on redirect because Defendant would likely be implicated in the unrelated criminal activity. The State countered that counsel's proposed line of questioning—proffered to demonstrate potential bias—would open the door for the State to get into the details of the crime on redirect, including Defendant's involvement. The trial court agreed with the State and denied defense counsel's request. Defense counsel made an offer of proof regarding Flemming's unrelated charges, which the trial court overruled.

After the jury returned a guilty verdict on both charges, Defendant timely filed a motion for new trial, which omitted any claimed error related to the trial court's denial of Defendant's offer of proof made during Flemming's testimony. Defendant's motion for new trial was denied, and he was sentenced as previously noted. Defendant now appeals.

## Standard of Review

■■■■ Ordinarily, a properly preserved error concerning the admission of evidence is reviewed on appeal for an abuse of discretion. *State v. Wolfe*, 13 S.W.3d 248, 258 (Mo. banc 2000). Unpreserved errors, however, are only reviewed for plain error, and such a review is undertaken at the Court's discretion. Rule 30.20. The burden is on the Defendant to demonstrate plain error. *State v. Mead*, 105 S.W.3d 552, 556 (Mo.App.2003). A Defendant must show (1) that the error was plain, i.e., evident, obvious, and clear, *State v. Bailey*, 839 S.W.2d 657, 661 (Mo.App.1992); (2) that a failure to correct the error would produce a manifest injustice or a miscarriage of justice, *State v. Brethold*, 149 S.W.3d 906, 909 (Mo.App.2004); and (3) that the error was outcome determinative, *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002). Such a standard places a much greater burden on Defendant than that ordinarily incurred on appeal, as he must go beyond a demonstration of mere prejudice and actually establish such a misdirection of the jury as would cause the requisite level of injustice. *State v. Reichert*, 854 S.W.2d 584, 601 (Mo.App.1993).

## Discussion

■■■■ Defendant's sole point relied on challenges the trial court's decision not to allow Defendant's trial counsel to cross-examine Flemming regarding a pending,

unrelated charge in the same county.[4] Because Defendant did not present this argument to the trial court in his motion for new trial, and because "[a]n issue that was never presented to or decided by the trial court is not preserved for appellate review," *VanBooven v. Smull*, 938 S.W.2d 324, 330 (Mo.App.1997), it is solely within our discretion to examine Defendant's claim for plain error. We decline such review because Defendant has failed to demonstrate that the trial court committed any error, plain or otherwise.

■ As a general rule, a witness may not be impeached with a mere arrest, investigation, or criminal charge not yet resulting in a conviction. *State v. Wise*, 879 S.W.2d 494, 510 (Mo. banc 1994). This rule exists because such evidence is generally considered inadmissible character evidence, lacking the necessary relevance to proving the case at hand, as well as not being a reliable gauge of the witness's credibility. *State v. Phillips*, 941 S.W.2d 599, 601 (Mo.App.1997).

■■ Like any rule, however, this principle has its exceptions, which are threefold: (1) where the inquiry would demonstrate a specific interest of the witness; (2) where the inquiry would demonstrate a witness's motivation to testify favorably for the State; or (3) where the inquiry would demonstrate that the witness testified with an expectation of leniency from the State. *State v. Broussard*, 57 S.W.3d 902, 915 (Mo.App.2001). Nevertheless, before a defendant can be allowed to use a pending charge to cross-examine a witness, he must lay a foundation clearly demonstrating one of the three exceptions outlined above. *State v. Harris*, 825 S.W.2d 644, 649 (Mo.App.1992). A pertinent part of such a foundation "is the witness' knowledge of these facts, his perception of expectancy of favorable treatment if he furthers the state's case, or his basis to fear harsh treatment if his testimony is unfriendly." *State v. McRoberts*, 837 S.W.2d 15, 20–21 (Mo.App.1992). "Speculating or theorizing motives for testifying is not sufficient to show the connection that is necessary to obviate the trial court's discretion." *State v. Watts*, 813 S.W.2d 940, 943 (Mo.App.1991).

■ Although Defendant asserts that he was entitled "to show the jury [Flemming's] possible motive to testify favorably for the Mississippi County Prosecutor's Office," he neglected to lay the requisite foundation in his offer of proof for presenting such possible bias to the jury at trial. Defendant's offer of proof consisted of nothing more than establishing that Flemming was facing some other unrelated pending charges in Mississippi County, and that those charges had not been resolved as of the time of his testimony.[5] Faced with no evidence of

---

4. The trial court's ruling appears to rest on the fact that, if Defendant's counsel would have cross-examined Fred Flemming regarding the pending unrelated charge, it would have opened the door for the State to elicit information tying Defendant to the same unrelated criminal incident, in an apparent violation of Defendant's rights. It is unnecessary for us to reach this analysis, however, as Defendant failed to lay a proper foundation during his offer of proof.

5. Defense counsel's questioning of Flemming in Defendant's offer of proof consisted of the following:

Q: Mr. Flemming, tell us what you have pending in this county?
A: The robbery and burglary.
Q: Okay. You have a pending burglary?
A: Yes.
Q: Are there any other charges pending?
A: I guess some stolen property or something like that.
Q: So you have stealing charges pending?
A: I believe so.
Q: Along with a burglary charge?
A: Yes.
Q: Is that here in Mississippi County?
A: Yes.
Q: And the Prosecutor on that is Mr. Cann?
A: I guess, yes.

Flemming's perception of either favorable treatment if he testified favorably to the State or harsh treatment if he testified unfavorably, the trial court was acting within its discretion and committed no error when it subsequently ruled that evidence of the unrelated pending charges against Flemming was inadmissible.[6] *See State v. Harris*, 825 S.W.2d 644 (Mo.App.1992) ("speculative and unsubstantiated claim that a possible deal had been made" between the witness and the prosecution regarding unrelated pending criminal charges does not amount to a proper foundation); *State v. Butler*, 984 S.W.2d 860 (Mo.App.1998) (defendant's claim that "the state gave [the witness] favorable treatment" in a pending, unrelated case was not enough to establish a proper foundation where the witness at issue testified that she "did not discuss her pending charge with the prosecuting attorney" and that she "had no expectation of any favorable treatment"); *State v. Wise*, 879 S.W.2d 494 (Mo. banc 1994) (a defendant "must demonstrate the witness' perception of expectancy of favorable treatment if he furthers the state's case, or his basis to fear harsh treatment if his testimony is unfriendly"); *State v. Franklin*, 16 S.W.3d 692 (Mo.App.2000) (defendant's argument that "the jury could have found that [the witness] had perceptions of the prosecution's power over her pending charges and this gave her a motive to lie," without some corroborating evidence, is "speculative and therefore insufficient to show an abuse of discre-

tion"); *State v. Francis*, 997 S.W.2d 74 (Mo.App.1999) (assertions of possible biased testimony by a defendant were unsupported by the record, because defendant presented no evidence to the court that the witness received favorable treatment, and the prosecutor assured the court that there were no agreements between the state and the witness).

Defendant's reliance on *State v. Joiner*, 823 S.W.2d 50 (Mo.App.1991), and *State v. Thomas*, 118 S.W.3d 686 (Mo.App.2003), to support his claim of error is misplaced. In *Joiner*, the witness at issue gave testimony that could potentially have led the jury to believe the witness expected favorable treatment, particularly when taken in conjunction with the prosecutor's statement that "no deal has *yet* been made." *Joiner*, 823 S.W.2d at 53 (emphasis added). Moreover, the *Joiner* court noted that the trial court in that case had completely precluded any cross-examination designed to expose all potential bias of the witness; in the case at bar, the trial court permitted extensive cross-examination regarding other potential bias resulting from Flemming's plea agreement in the underlying case, and thus merely exercised its discretion in disallowing the challenged line of questioning, a path expressly permitted by the *Joiner* court. *Id.*

Defendant's reliance on *Thomas* fares no better. In *Thomas*, the two eyewitnesses at issue were facing unrelated pending charges in the same county, as in the case at bar. *Thomas*, 118 S.W.3d at 686. However, unlike the present case, the excluded cross-examination on the un-

---

Q: And you have that case and it has not been resolved at this point?
A: No.
[Defense Counsel]: Judge, I think that is all I do have.

**6.** In addition to Defendant's failure to lay a foundation showing possible bias, the State's cross-examination of Flemming during that same offer of proof established that there was

no contingency "deal" between the prosecutor and Flemming regarding his testimony and those particular pending charges, nor had there been any discussion of such a "deal," and the State further established that there had not been discussion of *any* plea agreement between the parties pertinent to the unrelated charges.

related charges was the only evidence of possible bias on the part of the two witnesses. *Id.* at 690–91. As mentioned above, the trial court in the instant case permitted extensive cross-examination of Flemming regarding the charges he faced relating to the incident at hand and his pending plea agreement, allowing Defendant to present other evidence to the jury that Flemming had a possible motivation to present testimony favorable to the State.

The trial court in this case effectively used its discretion to limit—not fore-close—cross-examination of Flemming's pending charges. A permissible discretionary ruling cannot now be construed as error, plain or otherwise. Defendant's point is denied.

### Decision

The trial court's judgment is affirmed.

BARNEY, P.J., and BURRELL, J., concur.