

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI, )
        Plaintiff-Respondent, )
vs. ) No. SD33339
ROMMEL R. NEWTON, ) **Filed: August 4, 2015**
        Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF DUNKLIN COUNTY

Honorable Joe Z. Satterfield, Special Judge

**AFFIRMED**

A jury found Rommel R. Newton ("Defendant") guilty of two counts of distributing marijuana, and the trial court sentenced Defendant as a persistent drug offender to fifteen years in the Department of Corrections. Defendant appeals and, in two points, claims that the trial court abused its discretion (1) in denying Defendant's request to cross-examine a confidential informant as to the informant's bias in favor of the State arising from a municipal domestic assault charge that had been dismissed as a result of the informant working as an informant before the offenses charged in this case occurred; and (2) in prohibiting Defendant from asking any questions during *voir dire* about Defendant not testifying. Although we agree that the trial court may have abused its

1

discretion in both instances, we deny Defendant's points and affirm because the State convinces us the trial court's error raised in Defendant's first point was harmless beyond a reasonable doubt, and Defendant fails to convince us there is a real probability he was prejudiced by the trial court's error raised in Defendant's second point.

## Standard of Review

### *Point I*

We review a trial court's decision to exclude evidence for abuse of discretion and resulting prejudice. *See **State v. Wolfe***, 344 S.W.3d 822, 837 (Mo.App. S.D. 2011); ***State v. Mason***, 95 S.W.3d 206, 211 (Mo.App. S.D. 2003); ***State v. Barriner***, 111 S.W.3d 396, 401 n.4 (Mo. banc 2003). "A trial court abuses its discretion in excluding evidence if its decision shocks the sense of justice or indicates an absence of careful consideration." ***Wolfe***, 344 S.W.3d at 837; *see also **State v. Robinson***, 90 S.W.3d 547, 550 (Mo.App. S.D. 2002) ("Such abuse of discretion occurs when the trial court's evidentiary ruling is clearly against the logic of the circumstances before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful deliberate consideration."). A trial court does not abuse its discretion when it excludes evidence that is merely cumulative to other admitted evidence. ***Wolfe***, 344 S.W.3d at 837; ***Mason***, 95 S.W.3d at 211.

Trial court error in excluding admissible evidence in a criminal case creates a rebuttable presumption of prejudice. *See **State v. Hopper***, 315 S.W.3d 361, 367 (Mo.App. S.D. 2010); ***Barriner***, 111 S.W.3d at 401. When the error was preserved, the State must show the error was harmless beyond a reasonable doubt to rebut the

2

presumption of prejudice. *See Hopper*, 315 S.W.3d at 367; *State v. Sanders*, 126 S.W.3d 5, 23 (Mo.App. W.D. 2003).

*Point II*

As our high court has observed:

> "A defendant is entitled to a fair and impartial jury." *State v. Oates*, 12 S.W.3d 307, 310 (Mo. banc 2000). While a "necessary component of a guarantee for an impartial jury is an adequate *voir dire* that identifies unqualified jurors[,] . . . the trial judge is vested with the discretion to judge the appropriateness of specific questions, and is generally vested with wide discretion in the conduct of *voir dire*." *Id*. "The judge is in the best position to determine whether a disclosure of facts on *voir dire* sufficiently assures the defendant of an impartial jury without at the same time amounting to a prejudicial presentation of the evidence." *Id*. at 310–11 (internal quotation marks and citation omitted). Because rulings by the trial court are reviewed only for an abuse of discretion and "[a]n appellate court will find reversible error only where an abuse of discretion is found and the defendant can demonstrate prejudice," [the defendant] "has the burden of showing a 'real probability' that he was prejudiced by the [alleged] abuse." *Id*. at 311.

*State v. Baumruk*, 280 S.W.3d 600, 614 (Mo. banc 2009).

**Facts and Procedural History**

Defendant was charged by amended information with (1) distribution of more than five grams of marijuana on October 27, 2011, in Count I, and (2) sale of more than five grams of marijuana on December 6, 2011, in Count II.[1] The amended information also alleged that Defendant was a persistent drug offender. Defendant initially was arrested on the offense charged in Count I in August 2012.

In a pretrial conference on July 22, 2013, prosecutors represented that a confidential informant had no record of any arrests other than arrests that led to disclosed

---

[1] The amended information was filed on the morning of trial, and charged Defendant with "distribution" of more than five grams of marijuana in Count I and "sale" of more than five grams of marijuana in Count II; however, the verdict directors given to the jury and the jury's verdicts phrased both counts as charging distribution.

convictions. A prosecutor subsequently acknowledged that the confidential informant was arrested for an alleged violation of a municipal ordinance – a "traffic offense" for which the statute of limitations had run.

At the pretrial conference, the trial court also reviewed its *voir dire* practice with counsel and stated:

> I go back through this, again, about if Defendant would not testify, then --
> I believe they're asked the question -- or the State -- or the State can ask it
> or [defense counsel] can ask it, but phrased in a way that I don't get 60
> hands up in the air, which, basically, my understanding is that -- basically,
> what I do is, certain everybody understands, they're advised he has a right
> not to testify and that that can't be used against him, it's his constitutional
> right. And that if he requests it, I would provide an instruction to that
> effect and read that instruction to them and ask if there's anybody that
> cannot or would not follow that instruction, and that's the end of the
> inquiry.
>
>         . . . .
>
> I certainly have no problem if [defense counsel] ask[s] that question and
> ask[s] if they can follow that instruction, but I've got into things before
> where the attorney will say, well, would anybody hold it against him if he
> didn't testify. And that's not the test.
>
>         . . . .
>
> I think it's detrimental to the Defendant, myself, to start in on those
> explorations, because this is going to get down to, no matter what -- where
> you go, I'm going to read an instruction at the end and I'm going to say,
> "Is there anyone here who can't follow that instruction?" And if nobody
> raises their hands, they're in. So I try to avoid that, because I really think
> it's to the benefit of the Defendant not to start opening that gate if that's
> where it's going to end. And that's where it's going to end because I think
> that's what the law is.
>
>         . . . .
>
>         If they say they can follow the instruction, that's the end of
> everything. They are -- They are qualified at that point.
>
>         . . . .

I think [defense counsel] can inquire. And I want [defense counsel] to inquire if you want to.

. . . .

But I will approve -- I will have to approve the question, because I'm not going to get into questions such as . . . how many in here think the defendant should testify? That's not the -- That's not the standard.

. . . .

That's the end of the inquiry if they say they can follow it.

. . . .

If they say they can't follow it, then I'm going -- I'm not going to allow them to be on the jury, they'll be stricken for cause, I mean, if they raise their hand at all.

Defense counsel and the trial court then had the following exchange:

[DEFENSE COUNSEL]: Okay. Well, I guess my only concern would be -- in a situation such as that one would be whether a potential jury could possibly – you know, with some inquiry -- some further inquiry, we might get to the bottom of where they realize that they can't follow that instruction. Do you understand what I'm trying to say?
THE COURT: I understand what you're trying to say. But you open a whole boatload of stuff when you do that; and, no, you won't do that in my court.

On the morning of trial on March 31, 2014, before the commencement of *voir dire*, the following occurred. The trial court found Defendant to be a prior and persistent drug offender based on Defendant's two prior felony convictions for drug violations (the guilty pleas were in 2007). Defense counsel further stipulated that Defendant was the "sole resident" of the residence at 643 Goldsmith in Malden. The stipulation subsequently was reduced to writing at the pretrial conference.

In response to a prosecutor's request that defense counsel "be restrained from asking in *voir dire* about any opinions as far as the Defendant not being allowed to

5

testify" and defense counsel's statement that "in every trial I've ever done there's invariably somebody that has said that they will hold that against them no matter what the instructions given by the Court," the trial court stated:

> Somewhat to my surprise in recently looking at this issue, I have found the statute and the Court rule that [the prosecutor is] referring to and several recent cases that says it is absolutely not allowed, even in voir dire, for years me thinking just the opposite. But I do not believe it is allowed and there's some of the cases talk about it's reversible error to allow it.
> So I am not going to allow any questions from the State or the Defendant -- defense concerning whether the Defendant will or will not testify. And certainly if he doesn't testify, I will submit the appropriate instruction if the Defendant requests that.

At the trial court's suggestion, defense counsel stated for the record that he would like to ask "the jurors their views on the issue of the Defendant not testifying and whether or not any of those jurors would hold that against him." The trial court granted defense counsel's request for a continuing objection to the trial court's ruling denying him the right "to examine the panel on this issue of Defendants right not to testify."

At the beginning of *voir dire*, the trial court instructed the venirepersons that "there are issues of fact that must be decided by a jury, subject to instructions concerning the law which the Court will give to the jury. The jury is obligated to follow those instructions." The trial court further instructed the venirepersons that:

> It is your duty to follow the law as the Court gives it to you in the instructions even though you may disagree with it.
> Are there any of you who would not be willing to follow all instructions which the Court will give to the jury? If so, would you please raise your right hand at this time? The record will reflect that no hands were raised.

In discussing the use of confidential informants with the venirepersons, a prosecuting attorney told the venirepersons "[m]any times those informants have previously been arrested or convicted of crimes and sometimes serious ones."

6

Immediately after opening statements, the trial court told the jury:

> The parties have stipulated that the residence located at 643 Goldsmith, Malden, Missouri, was the residence of the Defendant, Mr. Newton, and that he was the sole occupant of that location and that he had exclusive control of those premises on the dates of October 27, 2011 and December the 6th of 2011.

At issue is the limitation of cross examination of Ben Handy. Handy, a confidential informant for the Southeast Missouri Drug Task Force, testified as follows. Handy (1) was paid to work as a confidential informant, (2) had no charges pending against him "at the end of 2011," and (3) was found guilty of statutory rape in the first degree in 2000 and of involuntary manslaughter in 2007 and served "time" on both offenses. Handy had known Defendant for "over ten years," and knew him before he started working as a confidential informant.

A little after noon on October 27, 2011, Handy purchased three ounces of marijuana from Defendant at Defendant's home at 643 Goldsmith in Malden with money Handy had received from law enforcement.[2] Handy paid Defendant $200 for the marijuana. The sale was recorded by an audio-video recorder. The recording is very unclear, but at most shows a black male talking with Handy, with many of the views of the black male being reflections in a mirror.

Shortly after 5:30 p.m. on December 6, 2011, when it already was dark outside, Handy purchased one ounce of marijuana from Defendant outside Defendant's home at 643 Goldsmith, again with money Handy had received from law enforcement.[3] Handy

---

[2] The State Highway Patrol crime laboratory determined the marijuana weighed 75.86 grams, which is approximately 2 and ½ ounces.

[3] The State Highway Patrol crime laboratory determined the marijuana weighed 26.55 grams, which is a little less than one ounce.

7

paid Defendant $75 for the marijuana. Handy's purchase and the events leading up to the purchase were again recorded by an audio-video recorder. The recording does not show an identifiable image of the person who sold the marijuana to Handy,[4] but Handy does indicate he is on "Goldsmith" street at least twice, states "643" on multiple occasions and states "643 Goldsmith" on another occasion. When Handy knocks on the door, an individual inside the home asks Handy to "hit [or take] a block, come back." Handy understood this request to mean that Handy should leave and return a short time later. Handy did so and, when he returned, purchased the marijuana outside Defendant's home. Because it was dark, very little of the actual sale was visible on the recording.

Handy identified Defendant in court as the person from whom he purchased the marijuana on October 27 and December 6, 2011.

In a bench conference immediately following Handy's direct examination, defense counsel requested permission to cross-examine Handy on a Malden municipal charge of domestic assault against Handy that had been dismissed prior to Handy's purchases of marijuana from Defendant. Defense counsel argued that Handy:

> has like a guillotine, if you will, hanging over head that because of these assault charges that the Prosecutor can file if he doesn't make something happen doing these drug buys, and it is a motive for him to buy or exaggerate or to fabricate or to do anything, I think that's absolutely fair cross-examination.

The trial court ultimately denied defense counsel's request because Handy "testified he was not placed on any charges at the time of these alleged buys, it is a municipal violation, he's also testified that he was being paid to make these buys."

In an offer of proof, defense counsel stated:

---

[4] The State incorrectly asserts in its brief that the recording shows Defendant's face. The recording does not show Defendant's face, but may show the face of a person who was completely unrelated to Defendant based on the recording and the transcript of the trial.

> Were Mr. Handy allowed to testify before the jury, during my cross-examination I would elicit from him . . . that at the time that the police -- prior to ever doing anything in the case of State versus Rommel Newton, he had pending charges of domestic assault. And that those charges could have resulted in more serious charges. That they could have been picked up by the State in this matter and charged as felonies, he could have gone to prison for those charges.

In addition, portions of Handy's pretrial deposition were read into the record. In the deposition, Handy acknowledged that charges against him were dropped, but noted "[i]t wasn't this case. I got my case dropped. I got paid on this case," and stated that he did not have any pending charges "at the time of [Defendant]." Handy further stated in the deposition "I thought [the domestic assault charges] were cleared up on the previous one. Okay. That's what I thought. I'm not saying they was. That's what I thought." The trial court refused to permit defense counsel to ask Handy additional questions related to the offer of proof. Later in the trial after the State rested, the parties, as part of an offer of proof, entered a stipulation similar to Handy's pretrial deposition. The trial court also permitted Southeast Missouri Drug Task Force officer Ron Meredith to be questioned at that time as part of the offer of proof. Officer Ron Meredith added the following information. Officer Meredith began working with Handy "in the middle of 2011," and Officer Meredith "did not believe there would be any charges pending or worked off, that those were covered by another agent of the Task Force at that time." Officer Meredith also stated that a confidential informant either "work[s] off charges" or is "paid" but not both. Additional facts will be discussed in the context of the points relied on.

In closing argument, defense counsel stated "we're not arguing with the fact that drugs were sold. . . . Drugs were sold. The only question is who. Who sold drugs that day."

9

The jury found Defendant guilty of distributing more than 5 grams of marijuana on October 27, 2011, and on December 6, 2011.

As a persistent drug offender, Defendant's range of punishment for each offense was "not less than 10 years and not to exceed 30 years, or life imprisonment" "without probation or parole." At the time of sentencing and of the offenses in this case, Defendant was on parole from a thirteen-year sentence imposed in 2007 for "drug trafficking." The trial court sentenced Defendant to fifteen years in the Department of Corrections for each offense with the sentences to run concurrently with each other and with his 2007 sentence.

**Analysis**

*Point I*

In his first point, Defendant asserts that the trial court abused its discretion in denying Defendant's request to cross-examine Ben Handy, a confidential informant, "about a [municipal] domestic assault charge that had been dismissed as a result of [Handy] working as a[n] . . . informant" before the offenses charged in this case occurred in that Defendant should have been permitted "to inquire about [Handy's] bias" in favor of the State and the trial court's denial of the inquiry prejudiced Defendant.

A "commonly recognized method[] of impeaching a witness" is "admission of evidence of the witness's bias, interest or prejudice[.]" *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010). Subject to the trial court's discretion to "limit[] or, in rare instances, preclud[e] such evidence entirely so as to avoid undue prejudice," a witness can be cross-examined about any matter that shows the witness' bias, interest or

10

prejudice in the proceeding, and extrinsic evidence can be introduced to show the bias, interest or prejudice even when the witness admits the matter. *Id.* at 676, 679, 680-82.

These principles form the foundation for the rule that evidence of a witness' "arrests and pending charges not previously resulting in conviction" is admissible "where the inquiry shows a specific interest of the witness, a *possible* motivation of the witness to testify favorably for the government, *or* where testimony was given in the expectation of leniency." *State v. Joiner*, 823 S.W.2d 50, 52-53 (Mo.App. E.D. 1991) (emphasis in original). Although *Joiner* involved pending charges against a witness being prosecuted by the same office that was prosecuting the defendant, *Id.* at 52,[5] the Eastern District of this Court's discussion of the Supreme Court of the United States' decision in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), and the general principles set forth above indicate that the same analysis should apply to a previously dismissed charge where the jury reasonably could find that the dismissal gave the witness a motive to favor the prosecution. *Id.* at 54, 53-54.

In this case, on the basis of defense counsel's offer of proof, the municipal prosecuting authority dismissed the charge in exchange for Handy's agreement to "work off" the charge by acting as a confidential informant. Handy "thought," but was not sure, the charge had been "cleared up" before he first bought marijuana from Defendant. Handy was paid for his work as a confidential informant in Defendant's case. Handy worked off the dismissed charge no more than a few months before he first bought marijuana from Defendant, and the prosecuting authority who was prosecuting Defendant could have refiled the dismissed municipal charge as a felony for which Handy "could

---

[5] *See also* **State v. Thomas**, 118 S.W.3d 686, 690 (Mo.App. W.D. 2003) ("The court may not 'wholly exclude' evidence of pending charges against a witness brought in the name of the same prosecutor." (internal citation omitted)).

have gone to prison" if he were found guilty. Although the jury was informed that law enforcement paid Handy for his work as a confidential informant in Defendant's case, the trial court prohibited all inquiry before the jury about the dismissal of a municipal charge in exchange for Handy's agreement to work as a confidential informant a short time before Handy's work in Defendant's case. The jury reasonably could have viewed Handy's potential loss of liberty as a more significant incentive to testify favorably to the State than mere money. In these circumstances, the trial court abused its discretion in precluding any inquiry about the dismissal of the municipal charge in exchange for Handy's work as a confidential informant.

The State refers us to *State v. Watts*, 813 S.W.2d 940 (Mo.App. E.D. 1991) and our opinion in *State v. Moore*, 252 S.W.3d 272 (Mo.App. S.D. 2008) as support for the trial court's prohibition. In *Watts*, the trial court prohibited defense counsel from cross-examining the arresting officer-witness about the dismissal of a criminal charge against the officer because "[t]here was no nexus between" the dismissal and the officer's trial testimony sufficient to permit the introduction of the dismissal as evidence of bias. *Watts*, 813 S.W.2d at 943. In addition the speculative possibility of future prosecution was insufficient to establish the required nexus. *Id.* In this case, Handy was "working off" the dismissed charge no more than a few months before he first bought marijuana from Defendant, and, though Handy thought he had "cleared up" the dismissed charge when he first bought marijuana from Defendant, Handy was not sure. In these circumstances, the possibility of future prosecution was not too speculative and the jury reasonably could have found these facts gave Handy a motive or incentive to favor the prosecution.

12

In *Moore*, the trial court permitted the jury to be informed of an accomplice-witness' plea agreement for crimes arising out of the incident at issue in the defendant's trial, but prohibited defense counsel from inquiring about unrelated charges pending against the accomplice-witness in the same county. *Moore*, 252 S.W.3d at 275, 276 n.5. We declined plain error review because Moore failed to demonstrate "any error, plain or otherwise." *Id.* at 276. In so holding, we noted that Moore neglected to establish that the accomplice-witness perceived a benefit or detriment from his testimony with respect to the unrelated pending charges. *Id.* at 276-77. We also noted that the trial court permitted a full inquiry into the accomplice-witness' bias based on his plea agreement in the underlying criminal proceeding with the result that the trial court permissibly limited rather than impermissibly foreclosed evidence of the accomplice-witness' bias. *Id.* at 277-78. Although it would be a best practice to allow cross examination in close calls on questions of bias and, assuming without deciding, that the court erred in excluding the proposed testimony, we are convinced that any such error was harmless beyond a reasonable doubt because, in this case, the offer of proof suggested a direct connection between the dismissal of Handy's municipal charge and his work as a confidential informant and that, though Handy thought the dismissed charge had been "cleared up" before he first bought marijuana from Defendant, he was not sure. It further appeared that the dismissed charge had been "worked off" not more than a few months before Handy first bought marijuana from Defendant. The jury reasonably could have found that Handy perceived a risk of future prosecution based on his testimony at trial. And, the exclusion of the most significant evidence of bias (i.e., Handy's potential loss of liberty) is an impermissible limitation on evidence of bias and an abuse of discretion that

13

is not cured by permitting much less significant evidence of bias in the form of payment of money.

Although we conclude that the trial court erred, we reject Defendant's first point because the State convinces us the trial court's error was harmless beyond a reasonable doubt. Aside from Handy's testimony, Defendant stipulated that 643 Goldsmith was his residence, and he was the sole occupant and had exclusive control of his residence on the dates of the marijuana sales at issue. A Malden police officer testified that he visited Defendant at 643 Goldsmith, and that the residence depicted on the recording of the October 27, 2011 marijuana sale was 643 Goldsmith. A task force officer testified that he saw Handy pull into a driveway on Goldsmith during the October 27, 2011 marijuana sale. The Malden police officer also testified that he recognized the voice of the person "doing the majority of the speaking" on the recording of that sale as Defendant's voice.

On the recording of the December 6, 2011 sale of marijuana, Handy states he is on "Goldsmith" at least twice, states "643" on multiple occasions and states "643 Goldsmith" on another occasion. In addition, two task force officers followed Handy to the "600-block of Goldsmith."

Finally, although insufficient to cure the trial court's error, there was some evidence of Handy's bias in favor of the prosecution (i.e., he was paid for his work as a confidential informant with Defendant), and the jury was informed of Handy's two prior convictions for statutory rape and involuntary manslaughter.

In these circumstances, the trial court's error was harmless beyond a reasonable doubt. Defendant's first point is denied.

*Point II*

In his second point, Defendant claims the trial court abused its discretion "in prohibiting [Defendant] from asking any questions during *voir dire* about [Defendant] not testifying" in that Defendant "was entitled to ask the venire panel questions in order to ensure that they would follow the law regarding the critical issue of him not testifying and to draw no negative inferences from his failure to do so." We agree the trial court abused its discretion, but deny this point because Defendant fails to convince us there is a real probability he was prejudiced by the trial court's error.

As we observed in *State v. Hohensee*, 353 S.W.3d 445, 447-48 (Mo.App. S.D. 2011):

> Defendant argues that the foregoing general rule should not be applied because § 546.270 and Rule 27.05 prohibit "any attorney in the case" from commenting on the defendant's failure to testify. As applied to the facts before us, that argument has no merit. Based upon our review of the record, it is evident that defense counsel made this neutral, prefatory remark as part of his *voir dire* examination to determine whether members of the venire could follow MAI–CR 3d 308.14, if that instruction were given. In that regard, the following quotation from *State v. Cokes*, 682 S.W.2d 59 (Mo.App.1984), is instructive:

>> It seems clear that appellant was entitled to have selected a fair and impartial jury, and therefore would be entitled to inquire at that point, on voir dire, whether any panel member would be prejudiced by appellant's failure to testify, or whether they would follow an instruction of the court on the subject. To have empanelled a fair and impartial jury was appellant's first right, or conjunctively to that was his right to have no adverse presumption or inference drawn by the jury by his failure to testify. He was entitled to both rights so as to reduce a possible jury reaction to lessen the state's burden to prove his guilt beyond a reasonable doubt because of his failure to testify.

> *Id*. at 61–62. Several reported decisions record instances in which similar *voir dire* questions resulted in venirepersons being stricken for cause after stating that they would not be able to follow such an instruction. *See*, *e.g.*,

15

> *State v. Garrison*, 292 S.W.3d 555, 557–58 (Mo.App.2009); *State v. Chaddock*, 280 S.W.3d 164, 166–67 (Mo.App.2009). Permitting defense counsel to ask panel members in *voir dire* whether they will draw an adverse inference if the defendant fails to testify is essential in order for a defendant to effectively exercise his or her right not to be compelled to testify. *See State v. Clement*, 2 S.W.3d 156, 159–60 (Mo.App.1999). Whether to engage in such *voir dire* and how it should be done are matters of trial strategy for defense counsel to decide. *See*, *e.g.*, *State v. Wright*, 978 S.W.2d 495, 500 (Mo.App.1998); *State v. Hamilton*, 871 S.W.2d 31, 33–34 (Mo.App.1993).

By prohibiting defense counsel from conducting any examination of the venirepersons to determine whether any of them would draw an adverse inference if Defendant failed to testify and if they would follow an instruction on the subject, the trial abused its discretion. However, Defendant fails to convince us that there is a real probability he was prejudiced by the trial court's error.

The trial court did tell the venirepersons generally that:

> It is your duty to follow the law as the Court gives it to you in the instructions even though you may disagree with it.
> Are there any of you who would not be willing to follow all instructions which the Court will give to the jury? If so, would you please raise your right hand at this time? The record will reflect that no hands were raised.

And, there is nothing in the record that suggests any juror declined to follow the trial court's specific instruction on the subject of Defendant's right not to testify that was included in the trial court's written instructions to the jury. Finally, as explained in our discussion of Defendant's first point, the evidence in this case was strong. In light of these facts, Defendant fails to convince us there is a real probability he was prejudiced by the trial court's error. Defendant's second point is denied.

The trial court's judgment is affirmed.

Nancy Steffen Rahmeyer, J. - Opinion Author

Don E. Burrell, P.J. - Concurs

William W. Francis, Jr., J. - Concurs