**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**Carl D. MARSHALL, Defendant–Appellant.**

**No. SD 29654.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 19, 2010.

Rosalynn Koch, Columbia, Missouri, for Appellant.

Chris Koster, Attorney General, and Jayne T. Woods, Assistant Attorney General, Jefferson City, Missouri, for Respondent.

GARY W. LYNCH, Presiding Judge.

Appellant Carl D. Marshall ("Defendant") was charged as a prior offender with the class C felony of second-degree assault of a law enforcement officer, in violation of section 565.082.[1] Defendant was found guilty as charged by a jury, sentenced to seven years in the Missouri

---

1. All references to section 565.082 are to RSMo Cum.Supp.2005.

Department of Corrections by the trial court, and now appeals. Defendant claims that the trial court plainly erred in not instructing the jury on self-defense and in failing to *sua sponte* intervene in the State's cross-examination of him. Finding no error, we affirm the trial court's judgment.

### Factual and Procedural Background

Defendant does not challenge the sufficiency of the evidence supporting his conviction, which, when viewed in the light most favorable to the verdict, *State v. Molina,* 272 S.W.3d 476, 476 (Mo.App.2008), reveals the following.

On December 23, 2006, Corporal George Falterman of the Missouri Highway Patrol arrested Defendant and took him to the Texas County Sheriff's Department for booking. Defendant was cooperative throughout the booking process until Corporal Falterman explained the jail's policy prohibiting jewelry in body piercings. Corporal Falterman told Defendant that he would need to remove his two earrings and his eye stud. Defendant refused to remove his jewelry. Corporal Falterman repeatedly asked Defendant to remove his jewelry, but Defendant continued to refuse, telling Corporal Falterman that it would not be removed.

After a few minutes of discussing the policy and requesting that Defendant remove his jewelry, Corporal Falterman realized that he was going to have to remove it himself and reached for Defendant's left ear. Before Corporal Falterman could touch Defendant's ear, however, Defendant grabbed the officer's arm, pulled the officer toward his chest, wrapped his arms around the officer's neck, and remarked, "I can take you."

Just a few minutes before, when Defendant initially started to resist Corporal Falterman's requests to remove his jewelry, Cheryl Reeder, the dispatcher and only other person at the jail, contacted a back-up officer, Jason Kirkman. When Officer Kirkman arrived, he saw Corporal Falterman arguing with Defendant about removing his jewelry. He heard Defendant tell Corporal Falterman that he was not removing his jewelry and neither was Corporal Falterman. Then, Officer Kirkman saw Corporal Falterman reach for Defendant's ear, and Defendant respond by attempting to put Corporal Falterman into a headlock as previously described.

In response, Corporal Falterman kept his head close to his chin to prevent Defendant from being able to wrap his arms around his neck. While Defendant was trying to force Corporal Falterman to lift his head, Corporal Falterman began punching Defendant in the mid-section in an attempt to get free from the headlock. It was at this point that Officer Kirkman used a taser on Defendant to get him to let go of Corporal Falterman. The taser strike allowed Corporal Falterman to get loose from the headlock, but Defendant continued to fight even harder.

Defendant attempted to bring Corporal Falterman to the ground by wrapping his arms around Corporal Falterman's waist. Recognizing the technique, Corporal Falterman lowered his center of gravity and twisted Defendant's head. This allowed Corporal Falterman to get the advantage over Defendant and apply a neck restraint to gain compliance. The neck restraint caused Defendant to pass out, which allowed Corporal Falterman and Officer Kirkman enough time to handcuff him.

Defendant woke up about four to five seconds later, after he was already handcuffed. Corporal Falterman then again attempted to remove Defendant's jewelry. Defendant began fighting and slinging his head back and forth the whole time Corpo-

ral Falterman was removing the eye stud and earrings. Despite Defendant's resistance, Corporal Falterman eventually removed the jewelry and placed Defendant in a cell.

Defendant was charged with second-degree assault on a law enforcement officer, under section 565.082. Before trial, Defendant apparently moved to exclude any evidence of Defendant's prior bad acts and any references to the fact that he was being booked on a charge for driving while intoxicated when the incident occurred.[2] The trial court granted the motions.[3] The testimony challenged by Defendant related to these motions will be set forth in the discussion of Defendant's second point, *infra.*

During his direct examination at trial, Defendant claimed that he refused to remove his jewelry because he didn't have the proper tools to do so. After refusing to remove his jewelry, Defendant said that he crossed his arms and turned his back to Corporal Falterman. At that point, Defendant stated that Corporal Falterman tackled him from behind, which caused Defendant to fall forward and grab Corporal Falterman's neck for balance.

During the instruction conference, the trial court mentioned, and Defendant agreed, that a self-defense instruction had been discussed, but that Defendant had chosen to withdraw the instruction. During closing argument, Defendant requested that the jury find him guilty of the lesser-included offense of third-degree assault of a law enforcement officer. After deliberations, the jury found Defendant guilty of second-degree assault of a law enforce-

ment officer, and the trial court sentenced Defendant, as a prior offender, to seven years in the Department of Corrections. Defendant timely appealed.

### Discussion

#### Self–Defense Instruction

■ In his first point on appeal, Defendant alleges that the trial court plainly erred in failing to instruct the jury on self-defense because the evidence required such an instruction. Defendant states that plain error review is warranted, under Rule 30.20,[4] because he did not request a self-defense instruction. As the State correctly notes, however, this is not correct because the record indicates that Defendant initially offered a self-defense instruction but chose to withdraw it prior to when the instructions were read to the jury. Thus, the issue in this point is whether Defendant waived his right to a self-defense instruction by withdrawing the offered instruction before the jury retired to deliberate.

Rule 28.03 requires a party to make specific objections to instructions and include such errors in his or her motion for new trial. If a party fails to do so, he or she may not challenge the instruction on appeal. Rule 28.03. Here, no objections were made during the time that the instructions were read, and the failure of the trial court to provide a self-defense instruction was not mentioned in the motion for new trial. Therefore, the claim of error was not preserved for appeal.

---

**2.** The motions were not included in the record on appeal.

**3.** The only mention in the record of these motions is a memorandum filed by the trial court at the start of the trial which stated that "Defendant's Motion to Exclude references to

the charge of DWI is granted. Defendant's Motion to Exclude Evidence of Defendant's Prior Bad Acts is Granted."

**4.** All references to rules are to Missouri Court Rules (2009).

■ Even though the claim was not preserved, it is within this Court's discretion to review for plain error. Rule 30.20. Defendant has the burden of demonstrating plain error by showing "(1) that the error was plain, i.e., evident, obvious, and clear; (2) that a failure to correct the error would produce a manifest injustice or a miscarriage of justice; and (3) that the error was outcome determinative." *State v. Moore*, 252 S.W.3d 272, 275 (Mo.App.2008) (internal citations omitted). As a general rule, instructional error seldom rises to the level of plain error unless the trial court "misdirected or failed to instruct the jury such that the error affected the jury's verdict, resulting in manifest injustice or miscarriage of justice." *State v. Beck*, 167 S.W.3d 767, 778 (Mo.App.2005); *State v. Cooper*, 215 S.W.3d 123, 125 (Mo. banc 2007).

■ Self-defense instructions are an exception to this general rule. The trial court must give a self-defense instruction if the evidence, when viewed in the light most favorable to the defendant, shows that self-defense is an issue in the case. *State v. Avery*, 120 S.W.3d 196, 200 (Mo. banc 2003). The court is required to do so *sua sponte* whenever there is substantial evidence to support the instruction, even if the defendant does not request that the instruction be given. *State v. Hiltibidal*, 292 S.W.3d 488, 493 (Mo.App.2009). To determine if substantial evidence exists is a question of law, and the "failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights." *State v. Huffman*, 711 S.W.2d 192, 192 (Mo.App.1986); *State v. Westfall*, 75 S.W.3d 278, 281 (Mo. banc 2002).

■ In the case at bar, had Defendant failed to request the self-defense instruction or object to its omission, this Court would be required to determine if there was substantial evidence to support the giving of a self-defense instruction. *See Hiltibidal*, 292 S.W.3d at 493. However, we need not address that issue because, even if there was substantial evidence requiring the giving of such an instruction, Defendant waived his right to a self-defense instruction by offering the instruction and then withdrawing it before the jury commenced deliberations.

*State v. Howard*, 615 S.W.2d 498 (Mo. App.1981), is instructive on this issue. In *Howard*, the attorneys for the State and defendant both agreed that no self-defense instruction would be given because the case would be submitted to the jury on the issue of assault with malice aforethought and assault without malice aforethought. *Id.* at 500. On appeal, the defendant then argued that the trial court erred in failing to give a self-defense instruction because there was sufficient evidence to require it. *Id.* In that case, the Eastern District of our Court held that no self-defense instruction was required because the defendant had "either waived the giving of the instruction, or invited error," and as a result, no manifest injustice occurred. *Id.*

■ Similar to *Howard*, Defendant in this case intentionally chose a trial strategy to forego the self-defense instruction and, in lieu thereof, argue a lesser degree of culpability—third-degree assault on a law enforcement officer. "If a party gets what he requests from the trial court, he should not be able to convict it of error, plain or otherwise, for complying with his request." *Beck*, 167 S.W.3d at 776. Here, Defendant advised the trial court that he did not wish to submit a self-defense instruction, and the trial court did not err in following Defendant's request. The trial court's decision not to submit an instruction considered and offered, but subsequently withdrawn, by Defendant does not constitute error. Point I is denied.

*Defendant's Cross–Examination by the State*

In his second point, Defendant contends that the trial court plainly erred in failing to *sua sponte* intervene when, in violation of his motions in limine, the State questioned Defendant about his prior bad act of driving while intoxicated, and intimated another prior bad act by asking him if he told Corporal Falterman to leave his intoxicated girlfriend out in the cold weather instead of taking her home.[5]

Defendant concedes that he did not preserve these claims for appeal because he did not object to the questions at trial and did not raise the issues in his motion for new trial. Defendant requests, however, that this Court exercise its discretion to review the claims for plain error resulting in manifest injustice under Rule 30.20.

The first step in reviewing a trial court's actions for plain error is determining if clear, evident and obvious error existed. *Moore*, 252 S.W.3d at 275. In making that determination, we observe that, had the alleged errors been properly preserved for appellate review, our standard of review is well established. Trial courts have broad discretion in determining whether to admit or exclude evidence. *State v. Sanchez*, 186 S.W.3d 260, 264 (Mo. banc 2006). "A reviewing court will reverse only upon a showing of a clear abuse of discretion." *Id.* A trial court's ruling is an abuse of discretion if it is clearly against the logic of the circumstances and is arbitrary and unreasonable. *State v. Batiste*, 264 S.W.3d 648, 650 (Mo.App.2008).

■ The character of a defendant may be referenced in a criminal trial if one of two circumstances exists. *State v. Tabor*, 193 S.W.3d 873, 878–79 (Mo.App.2006). First, a defendant is subject to impeachment for truth and veracity, the same as any other witness, if he or she chooses to testify as a witness. *Id.* at 879. Second, evidence of an essential character trait to the crime charged is always relevant to show innocence. *Id.* at 879.

---

5. We note that Defendant's second point is multifarious because it is complaining about two different claims of error. Rule 84.04(d)(1)(A); *see In re C.A.M.*, 282 S.W.3d 398, 405 n. 5 (Mo.App.2009). Defendant's second point reads as follows:

> The trial court plainly erred in failing to sua sponte intervene when, in violation of the motion in limine, the state questioned [Defendant] about his driving while intoxicated, and asked him if he told Falterman to leave his intoxicated girlfriend out in the cold instead of taking her home, because that evidence violated [Defendant's] rights to a fair trial and to be tried only for the offense with which he was charged, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 17 of the Missouri Constitution, in that impeachment of [Defendant's] testimony with his uncharged misconduct prejudiced the jury against him and risked a conviction on the basis of bad character and propensity instead of the evidence of the charged offense.

Defendant argues that the trial court erred because it didn't intervene when (1) the State questioned Defendant about the driving while intoxicated incident and (2) the State asked him about his girlfriend. Generally, a multifarious point leaves nothing for appellate review. *State v. Garrison*, 276 S.W.3d 372, 378 (Mo.App.2009). However, because combining these claims of error into one point does not impede appellate review of each claim of error, we will not exercise our discretion to dismiss this point.

We also note that, even though this point alleges that this testimony was elicited in violation of Defendant's motion in limine, we can not address that issue as Defendant has failed to include his motions in limine in the record on appeal and has failed to support this contention with any argument that the violation of a motion in limine changes in any respect the nature or character of the alleged error of admission of the challenged evidence when actually offered by the State.

■ Evidence of a defendant's prior bad acts, however, is generally not admissible to impeach the credibility of the defendant unless the defendant opens the door by introducing evidence of good character. *State v. Thomas,* 878 S.W.2d 76, 76 (Mo. App.1994). On the other hand, "[i]t is well established that a defendant who chooses to take the stand and testify on his own behalf 'is subject to contradiction and impeachment the same as any other witness.'" *Tabor,* 193 S.W.3d at 879 (quoting *State v. Selvy,* 921 S.W.2d 114, 116 (Mo. App.1996)).

In this case, Defendant testified in his own defense. On appeal, Defendant argues that the trial court erred during his cross-examination by, on its own initiative in the absence of an objection by Defendant, not intervening and preventing the State from asking questions related to his driving after having drunk intoxicants and his actions toward his girlfriend on the night of the incident.

In order to give context to the testimony elicited by the State on cross-examination, we must first consider Defendant's testimony during his direct examination. In response to the question, "Do you really remember anything after you were tased?" Defendant replied, "I remember everything, sir." When asked if there was anything else he wanted to tell the jury, Defendant said that he was sorry for his past record because he was a juvenile at the time. He further stated, "I didn't get in any more trouble while I was in prison or when I was out on parole. And I'm trying—tried my best to be a *model citizen* in every possible way I could." (emphasis added)

For further context, Defendant, in response to the very first question by the State on cross-examination, also testified that he remembered the details of the night of the incident very clearly.

To probe the veracity of Defendant's "clear" memory of that night and his testimony about being a "model citizen," the State asked him on cross-examination about the details of that evening as follows:

Q: Were you drinking that night before you went to the jail?

A: Yes, sir.

Q: How much?

A: About a pitcher of beer, give or take.

Q: Where did you drink the beer at?

A: In Cabool.

Q: A pitcher of beer?

A: Yes, sir.

Q: But you remember clearly everything that was happening?

A: Yes, sir. This was in a six-hour process. Yes.

Q: Oh, well, I don't think that's right, sir. Let's back up a little bit. What time did you drink the beer?

A: I don't know. It was through a process of—in the time.

Q: That's what I'm asking, what time did you drink the beer?

A: It was over a process of four to six hours.

Q: Where?

A: In a bar in Cabool.

Q: And you got in your car. Right?

A: Yes, sir.

Q: You drove off?

A: Yes, sir.

Q: Trooper Falterman stopped you?

A: Yes, sir.

Q: Did you have somebody else with you? Right?

A: Yes, sir.

Q: Who was that?

A: At the point in time, it was my girlfriend.

Q: What's her name?

A: Tammy LaRue.

Q: What kind of shape was she in?

A: She was passed out in the car.

Q: How much had she had to drink?

A: I couldn't tell you, sir.

Q: Trooper Falterman accommodated you and your girlfriend that night, didn't he?

A: Yes, sir.

Q: What did he do?

A: What do you mean, what did he do?

Q: Well, he put you under arrest for—obviously for driving while intoxicated, right, or for suspicion of that?

A: Yes, sir.

Q: Where did your girlfriend end up?

A: Falterman put her in the car, and my house was on the way to Texas County Jail, within a couple of blocks from here, and he dropped her off at home.

Q: So he took your girlfriend home for you?

A: Yes, sir.

Q: Instead of leaving her sitting on the side of the road, which is what you wanted to do. Right?

A: Because it was below 30 degrees. Yes, sir.

Q: You told the trooper to just leave her there passed out in your car, didn't you?

A: No, I didn't.

"Any possible impairment of a witness's ability to recall is relevant to his or her credibility." *State v. Oplinger*, 193 S.W.3d 766, 770 (Mo.App.2006). Thus, evidence that Defendant had recently ingested a pitcher of beer, an intoxicant, and may have been under its influence during the arrest and booking was relevant and admissible to impeach Defendant's alleged "clear" memory of the events leading up to the altercation with Corporal Falterman. The mode of transportation from the bar where the beer was imbibed to the location of the arrest was relevant in considering the elapsed time between the ingestion of the beer and the events at the jail about which Defendant testified. Thus, the questions about Defendant's drinking and driving were directly relevant to Defendant's credibility and his ability to perceive the events about which he was testifying, and as such, the probative value of this evidence outweighed any possible prejudicial impact.

While evidence of an arrest for an offense is not generally admissible to impeach the credibility of a defendant, *Thomas*, 878 S.W.2d at 77, here the State's question about Defendant's arrest was not for that purpose. The question came only after Defendant equivocated about the manner in which the officer had provided an accommodation for him and his girlfriend and it was asked to show why Defendant's girlfriend needed a ride home and why Defendant could not provide that ride. Moreover, even if the State had asked this question to impeach Defendant's credibility, the trial court did not abuse it's discretion in allowing it because "[o]nce defendants bring their own good character into issue, they may be impeached with their prior arrests to test their good character and credibility as witnesses." *Id.* (citing *State v. Parson*, 815 S.W.2d 106, 109 (Mo.App.1991)).

Similarly, the entire line of questioning regarding Defendant's drinking and driving and Defendant's treatment of his girlfriend was relevant to impeach Defendant's testimony that he had been a

"model citizen" since being paroled. "Where a defendant refers to a subject, even in a general way, he subjects himself to be cross-examined about that subject." *Tabor*, 193 S.W.3d at 879. Here, Defendant brought his character into issue by testifying that he was a "model citizen." As a result of that testimony, the State could cross-examine him about evidence that rebutted his characterization of himself, which in this case included testimony about his drinking and driving, his arrest for driving while intoxicated and his alleged disregard for his girlfriend's safety.

 Finally, and furthermore, the evidence about Defendant's girlfriend was also relevant to rebut Defendant's characterization of Corporal Falterman. Throughout his direct testimony, Defendant painted Corporal Falterman as a violent and aggressive person. For example, Defendant testified that Corporal Falterman, without provocation, tackled him from behind and initiated the struggle in the booking room. Thus, the evidence that the same officer, Corporal Falterman, took Defendant's girlfriend home, rather than leaving her passed out and alone on the side of the road, tended to refute Defendant's testimony that Corporal Falterman would behave in an unprovoked, violent and aggressive manner. Because the jury was free to believe either Corporal Falterman and Officer Kirkman's version or Defendant's version of the events that occurred in the jail that evening, the credibility of each witness was critical to the jury's determination.

Finding no abuse of the trial court's discretion in allowing the admission of this testimony even if Defendant had raised a proper objection and otherwise properly preserved the issue for our appellate review, we can find no clear, evident and obvious error supporting the exercise of our discretion to review for plain error. Defendant's second point is denied.[6]

### Decision

The judgment of the trial court is affirmed.

SCOTT, C.J., and RAHMEYER, J., concur.

---

6. In the argument portion of Defendant's brief on this point, Defendant also claims trial court error in allowing the State to argue in closing that Defendant had, in fact, told Corporal Falterman to leave his girlfriend in the car, when the record only supported that Defendant denied doing so. We do not address this alleged error because "[a]ppellate review is limited to issues presented by an appellant's point[s] relied on." *State v. Tanner*, 220 S.W.3d 880, 886 (Mo.App.2007) (quoting *State v. Butler*, 88 S.W.3d 126, 128 (Mo.App. 2002)).