

# Missouri Court of Appeals
## Southern District
### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD33622 |
| | ) | |
| JOEY LYNN PLUNKETT, | ) | Filed February 18, 2016 |
| | ) | |
| Defendant-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF STONE COUNTY

Honorable Mark A. Stephens, Associate Circuit Judge

<u>AFFIRMED</u>

A jury found Joey Lynn Plunkett ("Defendant") guilty of three counts (Counts 1, 2, and 3) of assault of a law enforcement officer in the second degree, *see* section 565.081.1, and one count (Count 4) of resisting arrest, *see* section 575.150.[1] On appeal, Defendant's first point claims the trial court erred in refusing his tendered instruction for "self-defense in resisting excessive force in an arrest," and his remaining three points seek Rule 30.20 plain error review, claiming that the trial court plainly erred in failing to *sua sponte* instruct the jury on Defendant's

---

[1] References to statutes are to RSMo Cum.Supp. 2012. Rule references are to Missouri Court Rules (2015). The trial court sentenced Defendant to concurrent sentences of fifteen years, seven years, and seven years in the Department of Corrections for the three counts of assault of a law enforcement officer. For resisting arrest, the trial court sentenced Defendant to four years in the Department of Corrections to run consecutively to the other sentences.

1

right to self-defense on the three assault counts.[2]  Finding no merit in Defendant's points, we affirm his convictions.

## Standard of Review

> The Court will reverse due to instructional error if there is error in submitting an instruction and prejudice to the defendant. To ascertain whether or not the omission of language from an instruction is error, the evidence is viewed in the light most favorable to the defendant and the theory propounded by the defendant.  If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it.
>
> The general rule is that an instruction must be based upon substantial evidence and the reasonable inferences therefrom.  Substantial evidence of self-defense requiring instruction may come from the defendant's testimony alone as long as the testimony contains some evidence tending to show that he acted in self-defense.  Moreover, an instruction on self-defense must be given when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony.  Even if no objection is made, the failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights.  This Court has also recognized that jury instruction, as to all potential convictions and defenses, is so essential to ensure a fair trial that if a reasonable juror could draw inferences from the evidence presented the defendant is not required to put on affirmative evidence to support a given instruction.

*State v. Westfall*, 75 S.W.3d 278, 280-81 (Mo. banc 2002) (citations and quotations omitted).

## Factual and Procedural Background

On the evening of January 8, 2013, according to a 911 recording, Cara Plunkett called 911 emergency services.  She began by telling the dispatcher her address and that "you guys do not want to go there with blue lights on" because her husband (Defendant) was "very stressed out" and "withdrawing from medication that his pain doctor put him on."  Cara told the dispatcher that Defendant's "truck hit my home."  She explained:  "He's got a Chevy Silverado

---

[2] All rule references are to Missouri Court Rules (2015).

. . . full of gasoline and propane tanks[,]"[3] and "[h]is medication is not right, right now. He's bipolar. He's got pain problems."

### *Officers' Testimony*

Officer Dustin Wells and Corporal Nathan Boone responded to Defendant's home in uniform and in their county-issued patrol cars without using the emergency lights, sirens, or megaphones. Upon arriving, Officer Wells observed a "male subject walking from the front porch to his vehicle[,]" so he announced "Stone County Sheriff's Office" multiple times. The male subject, Defendant, got inside the vehicle, a red truck, on the driver's side. Officer Wells went to the passenger's side of the truck and opened the door. Corporal Boone went to the driver's side and yelled for Defendant to exit the vehicle. Defendant then started the truck and moved it in reverse, almost hitting Corporal Boone. Defendant stopped and then started accelerating forward toward Officer Wells in the front yard. As Officer Wells ran toward his patrol car for protection, Defendant turned his truck, drove it into the backyard, hit a tree, and got stuck in the muddy yard. Officer Wells then approached the passenger side of the truck and knocked out the passenger-side window with a metal bar that he found on the ground. Corporal Boone knocked out the driver's side window with his baton and then opened the driver's side door. Corporal Boone punched Defendant in the head "two times, couple times" to get him to let go of the steering wheel so that Corporal Boone could pull him from the vehicle.

Defendant threw a clear container at Corporal Boone. The container turned out to be a Mason jar with the lid on and a rag coming out of the side. Corporal Boone realized later that the jar had been filled with gasoline, which had covered his clothes. Officer Wells and Corporal Boone pulled Defendant from the vehicle while he struggled. Defendant continued resisting, so

---

[3] The police later confirmed that the truck contained a fifty-five gallon blue plastic barrel of gasoline and a propane tank.

Corporal Boone instructed Officer Wells to "tase" Defendant, and Officer Wells did so. After that occurred, Defendant stated that he was "done fighting." Officer Wells placed Defendant in handcuffs, and after doing so, he found a "Bic lighter" in Defendant's hand.

### *Defendant's Testimony*

Defendant testified he had previously been diagnosed with bipolar disorder and ADHD, for which he had been prescribed Xanax and Adderall. Additionally, in 2012 and 2013, he sustained work-related injuries to his right shoulder and lower back. Because of his injuries, he was prescribed Lortab, Percocet, and Morphine, pain medications. He became dependent on Morphine. On January 8, 2013, Defendant's doctors decided to discontinue his use of Morphine. He had previously been taking Morphine twice a day.

According to Defendant, on the night in question, his yard was muddy and when he put his truck in gear, he couldn't get it to stop and it accidentally hit the "tongue of the trailer" home. Defendant went inside to talk to his wife, but she and the kids were gone. By this time, Defendant was "[d]etoxing off the medication[,]" which made him "kind of suicidal[,]" and he planned to kill himself using the gasoline and the lighter that he carried in his hand.

On his way back to his truck, two men approached Defendant, shined a flashlight on him, and said "we want to talk to you." Defendant continued to his truck and got in it because he was scared. Defendant never heard either man announce that they were from the Stone County Sheriff's Office. Defendant believed these men to be "some friends of Billy's, the guy that showed up there the night before and we got into it." In describing Billy and the events of the preceding evening, Defendant testified as follows: Billy had called Defendant on the night of January 7 and told Defendant that he could get Defendant more Morphine. Defendant agreed and gave Billy five hundred dollars. Billy "stiffed" Defendant on the Morphine but brought a PlayStation over to Defendant's instead. Defendant was going to take the PlayStation for the

4

five hundred dollars.  Upon learning that the PlayStation was stolen, Defendant refused, and a fight followed.

According to Defendant, once he was in his truck on the evening in question, he rolled up the windows and locked the doors.  Then he heard what he believed to be baseball bats trying to bust out his windows.  He turned the ignition on and off in order to flash the lights and warn his attackers that he was going to move the vehicle.  Defendant then drove through the yard without trying to hit either person.  In trying to get away from the men, Defendant got stuck in mud next to a tree in his yard.  Near the tree, there was a Mason jar with an old rag in it that Defendant had been using to burn leaves and clean some rusted pipes in order to install the propane tank.  The Mason jar was never in the vehicle, and he never threw its contents on Corporal Boone.  The men busted out the windows on each side of his truck, and the man on the driver's side began punching Defendant in the forehead.  Defendant picked up a jug of gasoline and used it as a shield against the punches.  Then, Defendant opened the door and tried to get out of the vehicle to defend himself.  Defendant first realized that the men were deputies when he heard one ordering the other to "tase" him.  Once he realized this, he dove onto his stomach.  He did not know that he was under arrest before he was "tased."

### *Instruction Conference*

The presentation of evidence concluded just before 2:15 p.m. on the second day of Defendant's jury trial.  At that time, the trial court dismissed the jury until 8:00 a.m. the next morning.  After the jury exited the courtroom and upon the trial court's inquiry as to their readiness to proceed with an instruction conference, both the prosecutor and defense counsel requested some "time" before proceeding.  The trial court granted their joint request and concluded the record for that day at 2:20 p.m.

5

The record recommences the next morning before the jury is called into the courtroom.

After announcing appearances, the following colloquy occurred:

> [Court]: Last night when we adjourned, we discussed jury instructions off the record and the counsel were putting them together. It was my understanding, Counsel, that you have – I've looked over both the clean copy and the dirty copy of the proposed instructions and counsel is in agreement with all of the instructions that are to be given, with the exception of one; is that –
>
> [Defense Counsel]: Correct.
>
> [Court]: -- right, [Defense Counsel]?
>
> [Defense Counsel]: Yes, Your Honor, sorry.
>
> [Court]: Okay. Why don't you proceed on your – you would like to have an instruction given as to self-defense. Why don't you make your argument on that?
>
> [Defense Counsel]: Your Honor, I would like an instruction related to instruction number 306.22, only in relation to count three [assault of Corporal Boone by throwing gasoline on him]. I think the evidence was certainly that [Defendant] mentioned during the course of his testimony that he defended himself, but furthermore - my intern has taken some notes and I remember him saying this now, that when I asked him if he was trying to get out of the vehicle, he said that he, that [Defendant] was the one who tried to open the door to get out so he could get on the ground and defend himself, never swung at officers, did not try to kill them, but I think the gist of it is that he actually tried to effectuate getting out of the car so that he could defend himself, and I believe that's what his testimony was, and as such I believe that the instruction on 306.22 is appropriate and I'm going to ask that you give that today.

After then listening to argument by the prosecutor and further argument by defense counsel, the trial court refused the requested instruction, stating:

> I'm reading your proposed instruction, which says a person who resists an arrest or threatens to resist an arrest is not entitled to use force to protect himself from that force which he has so provoked, unless he first clearly indicates to the law enforcement officer his desire to end his resistance and submit to the arrest, and there's just – there's no evidence. I don't think your client ever even attempted to claim that he tried to do that[.]

In accordance with the jointly proffered and agreed proposed instructions, the jury was instructed on three different degrees of assault of a law enforcement officer for each of the first

three counts, and Count 4 was submitted under both resisting an arrest and resisting lawful detention. The jury found Defendant guilty of three counts of assault of a law enforcement officer in the second degree and one count of resisting arrest. Under Count 1, the jury found Defendant guilty of assault of a law enforcement officer in the second degree, in that Defendant attempted to injure Officer Wells by striking him with a motor vehicle and Defendant knew that Officer Wells was a law enforcement officer. Under Count 2, the jury found Defendant guilty of assault of a law enforcement officer in the second degree, in that Defendant recklessly placed Corporal Boone in apprehension of immediate serious physical injury by driving at him and Defendant was reckless as to whether Corporal Boone was a law enforcement officer. Under Count 3, the jury found Defendant guilty of assault of a law enforcement officer in the second degree, in that Defendant recklessly placed Corporal Boone in apprehension of immediate serious physical injury by throwing gasoline on him and Defendant was reckless as to whether Corporal Boone was a law enforcement officer. Under Count 4, the jury found Defendant guilty of resisting arrest, in that Defendant knew or reasonably should have known that Corporal Boone was a law enforcement officer, was making an arrest for assault of a law enforcement officer (Officer Wells), and Defendant resisted by using violence or physical force. Defendant's motion for new trial alleged that the trial court "erred when it refused to submit MAI-CR 306.22 to the jury to consider related to Count [3]." Defendant's motion was denied, and this appeal followed.

## Discussion

### *Point 1—No Error in Refusal of Instruction A*

Defendant's first point alleges that the trial court erred in refusing Defendant's "tendered

Instruction A." As tendered by Defendant, Instruction A[4] provided:

INSTRUCTION NO <u>A</u>

PART A - GENERAL INSTRUCTIONS

One of the issues as to Count [3] is whether the use of force by the defendant against Nathan Boone was in self-defense. In this state, the use of force including the use of deadly force to protect oneself from excessive force by a law enforcement officer is lawful in certain situations.

A law enforcement officer making an arrest is entitled to use such physical force as reasonably appears necessary to effect such arrest. A person being arrested is required to submit to the arrest and is not entitled to use force to resist an arrest even if he believes such arrest to be unlawful.

A person being arrested can lawfully use force to protect himself from harm from the use of excessive force by a law enforcement officer if he reasonably believes that submitting to the arrest will not stop the use of excessive force by the officer and that force is the only means by which he can protect himself from the excessive force.

> However, a person who resists an arrest or threatens to resist an arrest is not entitled to use force to protect himself from the force which he has so provoked unless he first clearly indicates to the law enforcement officer his desire to end his resistance and submit to the arrest. Then, if the law enforcement officer persists in his use of excessive force, the person being arrested may use only that force which he reasonably believes is necessary to protect himself from the use of excessive force.

> In order for a person being arrested to lawfully use force to protect himself from excessive force by a law enforcement officer, he must reasonably believe he is in imminent danger of harm from the officer's use of excessive force. He need not be in actual danger but he must have a reasonable belief that he is in such danger.

> If he has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to protect himself from the excessive force.

---

[4] The State points out that "[b]ecause the charged offense occurred after August 28, 2007, the instruction should have been based on MAI-CR 3d 306.22A (Jan. 1, 2011), which differs in some respects from MAI-CR 3d 306.22," but that those differences are not "germane to the issue before the Court."

But a person is not permitted to use deadly force, that is force which he knows will create a substantial risk of causing death or serious physical injury, unless he reasonably believes he is in imminent danger of death or serious physical injury.

And, even then, a person may use deadly force only if he reasonably believes that submitting to the arrest will not stop the officer's use of excessive force, and he reasonably believes the deadly force is necessary to protect himself from the excessive force.

As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

PART B - SPECIFIC INSTRUCTIONS

On the issue of self-defense as to Count [3], you are instructed as follows:

If the defendant did not resist or threaten to resist arrest in his encounter with Nathan Boone, or if he resisted or threatened to resist arrest and clearly indicated to Nathan Boone his desire to end his resistance and submit to the arrest

and if, the defendant reasonably believed he was in imminent danger of harm from the excessive force by Nathan Boone and that submitting to the arrest would not stop the use of excessive force, and the defendant used only such force as reasonably appeared to be necessary to defend himself from such excessive force, then he acted in lawful self-defense.

And if, the defendant reasonably believed he was in imminent danger of death or serious physical injury from the excessive force by Nathan Boone and that submitting to the arrest would not stop the use of excessive force and he used only such deadly force as reasonably appeared necessary to defend himself from such excessive force, then he acted in lawful self-defense.

And if, the defendant reasonably believed he was in imminent danger of harm from the excessive force by Nathan Boone and that submitting to the arrest would not stop the use of excessive force and he used only such non-deadly force as reasonably appeared to him to be necessary to defend himself from such excessive force, then he acted in lawful self-defense.

And if, the defendant reasonably believed he was in imminent danger of harm from the excessive force by Nathan Boone and that submitting to the arrest would not stop the use of excessive force and he used only such non-deadly force as reasonably appeared to

9

him to be necessary to defend himself from such excessive force, then he acted in lawful self-defense, or

if the defendant reasonably believed he was in imminent danger of death or serious physical injury from the excessive force by Nathan Boone and that submitting to the arrest would not stop the use of excessive force and he reasonably believed that the use of deadly force was necessary to defend himself from such excessive force and he used only such deadly force as reasonably appeared necessary to defend himself from such excessive force, then his use of deadly force was in lawful self-defense.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in lawful self-defense, you must find the defendant not guilty.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

Defendant's point contends that this instruction was appropriate because "the jury was permitted to infer that Boone used excessive force in trying to break out [Defendant's] truck window . . . , that Boone's and Wells' conduct escalated the situation, causing [Defendant] to flee, and that Boone struck [Defendant] repeatedly, giving rise to [Defendant's] right to defend himself[.]"[5] The argument portion of Defendant's brief further contends that "[i]t was only after he had been subjected to this unjustified physical abuse that [Defendant] became aware that his two assailants were law enforcement officers—when he heard one give the other the order to use

---

[5] Defendant concludes his argument under this point by stating that he is entitled to a new trial on Count 4, resisting arrest. The State responds that Defendant is not entitled to relief on Count 4 because self-defense is not a defense to a charge of resisting arrest, citing *State v. Morris*, 285 S.W.3d 407, 415 (Mo.App. 2009). Because Defendant offered this instruction at trial for Count 3, one of the charges of assault of a law enforcement officer, the State's brief goes on to analyze whether the instruction is applicable to that offense. Defendant's Reply Brief notes that Point 1 of his original brief "inadvertently requested relief as to Count [4]" when it should have requested relief concerning Count 3. Defendant goes on to assert, however, that he is "entitled to a new trial on Count [3], assault of a law enforcement officer, and Count [4], resisting arrest." After full review of the briefs, the requested instruction, and the transcript, it is clear that Defendant is requesting relief concerning Count 3 only, and we will review accordingly.

10

the Taser." Defendant's argument also contends that "he was through fighting" and indicated "a desire to end his resistance as required by the instruction" upon being "tased."

Defendant's characterization of the facts on appeal support, at best, that he submitted to arrest the moment he realized his assailants were officers—according to Defendant, this was when Corporal Boone ordered Officer Wells to "tase" Defendant. Because Defendant threw gasoline on Corporal Boone before Corporal Boone told Officer Wells to "tase" Defendant, an instruction under MAI-CR3d 306.22A is inappropriate for two reasons.

First, the Notes on Use concerning MAI-CR3d 306.22A specify that "[t]his instruction is intended for those situations in which the defendant . . . knew the victim was a law enforcement officer making an arrest and claims he was defending himself against the use of excessive force by the law enforcement officer." MAI-CR3d 306.22A, Notes on Use 1. Under the theory propounded by Defendant, he could not have known that Corporal Boone was a law enforcement officer when he threw gasoline on him because Defendant did not realize that either man was a law enforcement officer until Corporal Boone ordered Officer Wells to "tase" Defendant. The events, as recounted by both Corporal Boone and Defendant, support that Defendant was "tased" after Corporal Boone was covered in gasoline. Therefore, Defendant's factual theory in this case does not support that he was defending himself against the use of excessive force by a known law enforcement officer.

Second, as the trial court noted, Defendant's requested instruction stated:

However, a person who resists an arrest or threatens to resist an arrest is not entitled to use force to protect himself from the force which he has so provoked unless he first clearly indicates to the law enforcement officer his desire to end his resistance and submit to the arrest. Then, if the law enforcement officer persists in his use of excessive force, the person being arrested may use only that force which he reasonably believes is necessary to protect himself from the use of excessive force.

11

In order for this instruction to be appropriate, Defendant would have had to "clearly indicate[] to the law enforcement officer his desire to end his resistance and submit to the arrest" before using force to defend himself. Under the facts as theorized by Defendant, he did not attempt to submit to arrest until after he threw the gasoline on Corporal Boone. Therefore, Defendant's theory does not support giving the instruction. Defendant's first point is denied.

### Points 2, 3, and 4 – No Plain Error Review For Invited Error

Defendant's second, third, and fourth points argue that the trial court plainly erred in failing to *sua sponte* instruct the jury on Defendant's right of self-defense as to Counts 1, 2, and 3,

> in that, taking the evidence in the light most favorable to [Defendant], the jury was permitted to infer that [Defendant] . . . believed that he was being assaulted by confederates of a drug dealer with whom [Defendant] had fought, and that his best defense against that assault was to [drive toward the attacker/throw gasoline on him] to get him to retreat and allow [Defendant] to escape.

Defendant's points do not specify which self-defense instruction[6] he believes the trial court should have *sua sponte* instructed the jury to consider; however, the argument section of his brief states: "Trial courts are required to *sua sponte* instruct on self-defense under MAI-CR3d 306.06A when the issue is raised by the evidence. *State v. Hiltibidal*, 292 S.W.3d 488, 493 (Mo.App. 2009)."[7]

Defendant's argument in all three points is premised upon the *Westfall* statement that "[e]ven if no objection is made, the failure to instruct upon a defense supported by the evidence

---

[6] There are eighteen jury instructions within the 306 series of MAI-CR related to self-defense.

[7] In his reply brief, Defendant attempts to amend his choice of instruction. Defendant states he mistakenly "argued that the conventional self-defense instruction in MAI-CR3d 306.06 should apply, rather than the specific instruction referring to law enforcement officers in MAI-CR3d 306.22." Defendant continues by stating that MAI-CR3d 306.22 "possibly should apply, but even if that is correct, [Defendant] believes the State was not prejudiced by this arguable error by appellate counsel[.]" Defendant is not permitted to amend his claim of error in his reply brief to argue that the trial court should have *sua sponte* instructed the jury on MAI-CR3d 306.22. "A claim of error first set forth in a reply brief does not present an issue for appellate review." *In re Marriage of Hunter*, 614 S.W.2d 277, 278 (Mo.App. 1981).

12

is plain error affecting substantial rights." *Id.* at 281.  Defendant then argues for a *per se* application of the *Westfall* rule because

> the duty to instruct on self-defense where supported by the evidence is so strong that, "[i]f the defendant injects self-defense into the case and there is substantial evidence to support a self-defense instruction, it is reversible error for the trial court to fail to submit a self-defense instruction to the jury under plain error review." *State v. Bolden*, 371 S.W.3d 802, 805 (Mo. banc 2012), citing *Westfall*, 75 S.W.3d at 281 n.9.

He concludes, therefore, that he "is *entitled* to plain error review under Rule 30.20."  (Emphasis added).  We disagree and determine that he is not.

In *Bolden*, the defendant and the State jointly proffered a defense-of-others instruction[8] to the trial court that was submitted to the jury.  *Id.* at 804.  On appeal, defendant contended that the trial court committed plain error by submitting this instruction.  *Id.* at 804-05.  Our supreme court reaffirmed the *Westfall* rule but found it inapplicable where "the proffering of an incorrect instruction to the trial court is an invited error by the party who proffered the instruction." *Id.* at 806.  The court noted that "[i]t defies logic and the clear directives of Missouri law to allow a defendant to both proffer an instruction to the trial court and to complain that the trial court's submission of that instruction to the jury is reversible error." *Id.*  "'It is axiomatic that a defendant may not take advantage of self-invited error or error of his own making.'" *Id.* (quoting *State v. Mayes*, 63 S.W.3d 615, 632 n.6 (Mo. banc 2001)).

In *State v. Marshall*, 302 S.W.3d 720, 724 (Mo.App. 2010), during the instruction conference, a self-defense instruction was discussed, but Marshall chose to withdraw the instruction.  On appeal, Marshall argued that "the trial court plainly erred in failing to instruct the jury on self-defense because the evidence required such an instruction." *Id.* at 724.  This district of our court held that Marshall "waived his right to a self-defense instruction by offering the

---

[8] "The defense-of-others justification is essentially an extension of the self-defense justification, in that the actor may do in another's defense anything the person himself may have lawfully done in the circumstances." *Bolden*, 371 S.W.3d at 805.

instruction and then withdrawing it before the jury commenced deliberations." *Id.* at 725. We determined that Marshall "chose a trial strategy to forego the self-defense instruction" and observed that "'[i]f a party gets what he requests from the trial court, he should not be able to convict it of error, plain or otherwise, for complying with his request." *Id.* (quoting *State v. Beck*, 167 S.W.3d 767, 776 (Mo.App. 2005) (overruled on other grounds by *Bolden*, 371 S.W.3d at 806).

*State v. Howard*, 615 S.W.2d 498 (Mo.App.1981), is also instructive. In *Howard*, the attorneys for the State and defendant both agreed that no self-defense instruction would be given because the case would be submitted to the jury on the issue of assault with malice aforethought and assault without malice aforethought. *Id.* at 500. On appeal, the defendant then argued that the trial court erred in failing to give a self-defense instruction because there was sufficient evidence to require it. *Id.* In that case, the eastern district of our court held that no self-defense instruction was required because the defendant had "either waived the giving of the instruction, or invited error," and as a result, no manifest injustice occurred. *Id.*

Here, the State and Defendant agreed and jointly proffered to the trial court "*all* of the instructions that are to be given, with the exception of one[.]" (Emphasis added). Although Defendant was under no legal compulsion to do so, this agreement and joint proffer was a request by Defendant, as well as the State, for the trial court to give only the proffered set of specified instructions to the jury to the exclusion of all other instructions "with the exception of one." While we addressed the exception in deciding Defendant's first point, Defense counsel's argument in favor of giving the excepted 306.22 self-defense instruction "only in relation to count three" demonstrates that when he agreed and made Defendant's instructional proffer to the trial court, he was clearly aware of and had considered that "the evidence was certainly that

14

[Defendant] mentioned during the course of his testimony that he defended himself[.]" This awareness and consideration indicates Defendant made a strategic decision to request the trial court to give a specific set of instructions to the jury, which, with the one expressed exception, excluded any self-defense instructions. The trial court granted Defendant's request and instructed the jury in accordance with his agreement and joint proffer.

Under these case-specific facts, we need not reach the issues of whether there was substantial evidence to support the giving of a 306.06A self-defense instruction in each of Counts 1, 2, and 3, and, if so, whether the trial court was required under *Westfall* to *sua sponte* submit such instructions, as Defendant claims, because even if the trial court erred in failing to do so, such error was invited by Defendant's request for the trial court to submit a specified set of instructions to the jury that did not include such self-defense instructions. *See Bolden*, 371 S.W.3d at 806; *Marshall*, 302 S.W.3d at 725; *Howard*, 615 S.W.2d at 500. Neither logic nor the law allows a defendant to both proffer a specific set of instructions to the trial court as "*all* of the instructions that are to be given" (emphasis added) and to complain that the trial court's submission of *only* that set of instructions is reversible error.

"Although plain error review is discretionary, this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *Bolden*, 371 S.W.3d at 806. Accordingly Defendant's second, third, and fourth points are denied.

### Decision

Defendant's convictions are affirmed.


GARY W. LYNCH, J., Opinion author

DON E. BURRELL, P.J., concurs

NANCY STEFFEN RAHMEYER, J., concurs

15