

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD36543
)
BRADLEY DOUGLAS COOK, ) **Filed: December 9, 2020**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Gayle L. Crane, Circuit Judge

**<u>AFFIRMED</u>**

Bradley Douglas Cook ("Appellant") was convicted of first-degree assault and armed criminal action, violations of sections 565.050 and 571.015, which stemmed from an altercation at a homeless shelter between Appellant and the victim.[1] Appellant claimed self-defense at trial. Appellant brings three points on appeal: (1) the trial court erred by refusing evidence that the victim was under the influence of methamphetamine at the time of the claimed assault; (2) the trial court erred or plainly erred in refusing a proffered self-defense instruction regarding withdrawal; and (3) the trial court plainly

---

[1] All references to statutes are to RSMo Cum.Supp. 2017, unless otherwise specified.

1

erred in submitting the verdict director for assault in the first degree without a paragraph required by the Missouri Approved Instructions ("MAI"). We deny all three points and affirm the conviction.

## Point I

Appellant claims that the trial court abused its discretion in limiting Appellant's defense by precluding Appellant from presenting evidence that the alleged victim was under the influence of methamphetamine during the altercation. Specifically, Appellant offered the medical records of the victim which indicated that, on the night of the altercation, the victim tested positive for methamphetamine. Additionally, Appellant offered the testimony of two doctors regarding their observations about people using methamphetamine and opinions that when someone tests positive at the hospital, the assumption is made that they have used methamphetamine within the last 24 hours. Finally, Appellant attempted to testify as to his opinion that the victim was using methamphetamine at the time of the altercation. The trial court refused all of the evidence.

As to the proffered medical record, the trial court refused it because the presumptive test would not necessarily show that the victim was "high on it this day" as opposed to a residual result from earlier ingestion. The trial court ruled the evidence would be admissible if a doctor or expert could establish that the victim was high at the time of the assault or could establish some sort of level of methamphetamine use on that day. The trial court ruled that Appellant's lay testimony would be insufficient to establish that the victim was impaired by methamphetamine at the time of the altercation.

Appellant did make an offer of proof by two doctors. The first doctor who stated that methamphetamine is a "mind-altering substance," which *can* cause a person to be irrational and aggressive; however, he did not know the half-life of methamphetamine and did not know how long it typically stayed in someone's system. The doctor testified that people on methamphetamine can "[d]o stuff that they normally wouldn't do." He did not claim to be an expert on urine drug tests but does trust the results for accuracy when he gets them for medical diagnosis and treatment. Likewise, he did not know the cutoff level for methamphetamine in a urine test.

An emergency room doctor testified that he had seen a lot of people in the emergency room where he worked who had used methamphetamine. He considers the urine screening for methamphetamine to be generally reliable. He testified that if someone tested positive for methamphetamine on a urine test, they would have used methamphetamine within the last 24 hours. Although he was familiar with the urine screening procedures for his hospital, he also did not know the half-life of methamphetamine and did not know the cutoff level for the test. The doctor testified that the emergency room staff "generally" infers that the usage was within the previous 24 hours, but that was because people they treated were symptomatic so it would look like acute intoxication. He did not know about the testing protocols at the hospital where the victim was treated.

Appellant also made an offer of proof of his testimony. He testified that he had seen people on methamphetamine almost daily and had seen easily over 100 people under the influence of methamphetamine. Appellant testified that people on methamphetamine would be hostile, aggressive, agitated, and hyperactive, they would not be able to sit still.

He further testified that while under the influence of methamphetamine, their pupils get huge.  He further testified that in the week that he had seen the victim, the victim appeared argumentative, agitated, antsy and hyperactive.  He claimed that on the night of the altercation, the victim was argumentative and hostile when the victim started to get physical with Appellant and the victim's pupils were dilated.  He further testified that he had "heard rumors" that the victim used methamphetamine and it appeared more than likely that the victim was under the influence of methamphetamine because it had been the drug of choice around there for years.

Because of our standard of review, as set forth in ***State v. Burge***, 596 S.W.3d 657 (Mo.App. S.D. 2020), we must reject Appellant's argument.

> "The trial court has broad discretion to exclude or admit evidence at trial. This Court will reverse only upon clear abuse of discretion." *State v. Shockley*, 410 S.W.3d 179, 195 (Mo. banc 2013). "We further note that we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Bumbery*, 492 S.W.3d 656, 665 (Mo. App. S.D. 2016) (internal quotation and citation omitted). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.*

*Id.* at 661.

We reject Appellant's claim because we cannot find that the error was so prejudicial that Appellant was denied a fair trial.  There was evidence of the victim's aggressiveness toward Appellant from the testimony of Appellant and an eye witness of the altercation.  The eye witness testified that:  the victim yelled and shouted at Appellant several times and took an aggressive stance toward Appellant; the victim got in the way of Appellant doing his chores at the homeless shelter; and the victim "got in" Appellant's face.  The eye witness testified that he would have felt threatened had he been in

4

Appellant's position.  Further, the eye witness testified that the victim, who was bigger than Appellant, initially knocked Appellant to the ground and continued to punch him after he was down before Appellant was able to regain the upper hand and began punching the victim.  After the two wrestled on the ground, the eye witness heard the victim say, "You stabbed me?" and Appellant respond, "Yes, you're damn right I did."

Further, the jury heard evidence from Appellant that he was afraid, injured and acting in self-defense.  The jury heard about previous assaults by the victim and that the victim appeared angry and agitated for some reason.  When the victim interfered with Appellant's chores, Appellant pushed the victim back with a broom.  Appellant was then hit in the head by the victim and the victim punched Appellant so hard in the chin it rocked Appellant and he fell forward onto the ground.  The victim continued to punch Appellant on the ground and, at some point during this altercation, Appellant suffered a dislocated shoulder.  He testified that while the victim continued to throw punches at him, Appellant was afraid and stabbed him with the knife he had been using as a box cutter in his chores.  The jury heard that after Appellant walked away from the fight he told a police officer that he defended himself, that he was in fear for his life, and needed medical attention.  He led the officers to the knife he used.

The victim was not able to refute the details of the fight because he went "blank" after the initial verbal confrontation.  Despite all of this testimony, the jury convicted Appellant of first-degree assault and armed criminal action.  We fail to see how the admission of evidence as to *why* the victim was so aggressive would have changed the result.  The introduction of evidence that the victim was using methamphetamine would not affect whether Appellant assaulted the victim with the knife.  Ignoring the first prong

5

of whether it was error to deny the evidence, we cannot find that there is a reasonable probability that the trial court's error affected the outcome of the trial. The jury simply did not believe that Appellant acted in self-defense when he used the knife against the victim. Point I must be denied.

Point II

In Point II, Appellant claims that he was entitled to language in the self-defense instruction that he attempted to "withdraw" from the altercation because of his act in pushing the victim away from him early in the encounter. Appellant did not include this claim in his motion for new trial, thus, it is reviewed for plain error only. Generally, we reverse for instructional error if there is error in submitting an instruction and prejudice occurs to the defendant. *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002). The key inquiry is if the trial court "misdirected or failed to instruct the jury such that the error affected the jury's verdict, resulting in manifest injustice or miscarriage of justice." *State v. Marshall*, 302 S.W.3d 720, 725 (Mo.App. S.D. 2010) (internal quotations and citation omitted). The initial question is whether the court misdirected or failed to instruct the jury.

The evidence from both Appellant and the eye witness was that it was Appellant who initiated physical contact by using a broom he was holding to push the victim back. Appellant claims that his effort at pushing the victim away was so that each kept to themselves because the victim was getting in his face and threatening him. He said he was trying to calm the victim down; however, as soon as he pushed the victim away, the victim lunged at him and started attacking him.

The question as posed here is when did the confrontation begin. Appellant contends that it began with the victim screaming at him, that the victim was the initial aggressor by getting into his face. Appellant claims that his effort to withdraw was pushing the victim away from him. The State argues that Appellant was the initiator and that the confrontation occurred when Appellant pushed the victim. The State argues that once the initial push started the confrontation, Appellant did not withdraw from the confrontation and thus no "withdrawal" instruction was necessary.

The trial court accepted the position of the State, that the altercation began when the victim was pushed by Appellant, stating, "[I]f the jury believes [the victim] that [Appellant] is the initial aggressor the act of the initial aggressor would have been taking the broomstick and pushing [the victim.] At that time, since [he] is the initial aggressor, he would have had to do something else, he being [Appellant], that would clearly indicate to [the victim] that he wanted to end the encounter. And the Court has not seen any such evidence." The trial court did not err in finding that, after the physical confrontation commenced, Appellant made no effort to withdraw from the physical confrontation. The jury was given a self-defense instruction and could have found that the victim was the aggressor and that Appellant was simply defending himself in the best way he could from the larger and verbally aggressive victim. The factfinder did not do so. Appellant has failed to demonstrate that he suffered a manifest injustice when the trial court refused to add his requested paragraph to the self-defense instruction. Point II is denied.

## Point III

Appellant contends in his third point that the trial court plainly erred in submitting the verdict director for first-degree assault without a cross reference to the instruction for

self-defense as mandated by the instructions in the MAI. Appellant did not object to the failure, nor include the issue in his motion for new trial. So, again, we review for plain error. In this case, the self-defense instruction did state that "the [S]tate has the burden of proving beyond a reasonable doubt that [Appellant] did not act in lawful self-defense. Unless you find beyond a reasonable doubt that [Appellant] did not act in lawful self-defense, you must find [Appellant] not guilty." Clearly, it would have been better to link the two instructions; however, we do not find a manifest injustice or a miscarriage of justice. The jury was not misled by the failure to link the verdict director with the self-defense instruction. The jury was properly instructed that it was the State's burden to show that Appellant did not act in self-defense. Both the prosecutor and defense counsel explicitly referred to the self-defense instruction. Appellant's entire case was that he had acted in self-defense because of his fear of the victim. We cannot find that the trial court plainly erred in not linking the two instructions. Point III is denied.

The judgment is affirmed.


Nancy Steffen Rahmeyer, P.J. – Opinion Author

Daniel E. Scott, J. – Concurs

William W. Francis, Jr., J. – Concurs

8